Ex parte MAJESTIC COAL CO. et al.

POLO v. MAJESTIC COAL CO.

(6 Div. 687.)

(Supreme Court of Alabama. June 8, 1922. Rehearing Denied June 30, 1922.)

1. **Master and servant** ⟳348—**Compensation Act liberally construed.**

The Workmen's Compensation Act, being remedial in nature, should be given a liberal construction to accomplish the purpose intended.

2. **Master and servant** ⟳375(1) — **Injuries "arising out of and in course of employment" within Compensation Act defined.**

The Workmen's Compensation Act, providing compensation for injuries arising out of and in the course of the employment, embraces all injuries that arise out of and occur while the workman is doing what a man under like facts and circumstances, engaged in like employment, may reasonably do, within the time during which he is employed, and at a place where he may reasonably be during that time, in the conduct or projection of the employer's work or in the promotion or safeguarding of his business, or for the protection of the men and properties while used or engaged for the purpose of the master's business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

3. **Master and servant** ⟳375(1)—**Protection of Compensation Act not lost by temporary deviation from employment.**

An employee does not step aside from his employment and lose the protection of the Workmen's Compensation Act by a temporary deviation from his usual vocation when he is doing a reasonably necessary act at the time

and place to the end that the work and business of the employer may be properly conducted or preserved, the safety and health of the human and physical agencies therein engaged be conserved, and the ways, works, machinery, or plant safeguarded.

**4. Master and servant ⬅⇒375(1)—Injury to miner removing danger held one "arising out of and in course of employment" within Compensation Act.**

Where a miner had never been ordered not to pull down loose rock before his injury in removing rock with the aid of the employer's agent, who initiated such removal, ·and, on the contrary, it had been customary for employees to do such work, and they had been paid therefor, and plaintiff's attention had been called to the dangerous condition, and he was attempting to remove the danger that threatened the miners there engaged and the instrumentalities there employed in the master's business, the injury arose out of and in the course of the employment, within Workmen's Compensation Act, § 1.

Certiorari to Circuit Court, Jefferson County.

Action by Pasco Polo against the Majestic Coal Company and the Maryland Casualty Company, for damages under Workmen's Compensation Act. Judgment for plaintiff, and defendant's petition for certiorari to the Jefferson circuit court to review and revise said judgment. Writ denied.

T. A. Saulsbury, of Birmingham, for appellant.

The terms "arising out of" and "in the course of employment" are not synonymous, and the accident must both arise out of and in the course of the employment. 279 Ill. 11, 116 N. E. 684, Ann. Cas. 1918B, 764; 1 Honnold, W. C. A. 397; 190 Mich. 229, 157 N. W. 34; 236 Mass. 342, 128 N. E. 400; 293 Ill. 491, 127 N. E. 714; 220 N. Y. 71, 114 N. E. 1053; 235 Mass. 309, 126 N. E. 668; 120 Me. 236, 113 Atl. 270; 149 La. 71, 88 South. 691; 292 Ill. 590, 127 N. E. 168; 268 Pa. 163, 110 Atl. 731; 291 Ill. 301, 126 N. E. 218.

Frank Deedmeyer and Geo. P. Bondurant, both of Birmingham, for appellee.

An accident or injury arises out of and in the course of the employment, where it occurs while a workman is doing what a man in like employment may reasonably do. 1 Honnold, W. C. A. 346; 90 Conn. 539, 97 Atl. 1020; 129 Minn. 176, 151 N. W. 912; 80 Wash. 111, 141 Pac. 311; 83 Vt. 311, 75 Atl. 653, 26 L. R. A. (N. S.) 1195; 70 Ind. App. 112, 123 N. E. 194.

THOMAS, J. Plaintiff brought suit under the Workmen's Compensation Act against the defendant Majestic Coal Company, as employer, and its insurance carrier, Maryland Casualty Company, and recovered judgment as for a permanent total disability and for the maximum amount provided by section 13 and subsections "d," "e," and "h" thereof, providing for each totally dependent child. Gen. Acts 1919, pp. 206, 214, 215, 217.

The injury sustained July 22, 1920, was at a time when plaintiff was in the employment of defendant Majestic Coal Company. His spinal column was fractured by rock falling from the roof of the entry at a point between where he was engaged in mining and the exit therefrom. The result was that his lower limbs were paralyzed and his injury permanent and total. Plaintiff had dependent upon him a wife and three children; his wages were about $9 or $10 a day; "$150 per month in the clear"—from "$150 to $200 per month." The plaintiff was allowed for such injury $12 per week, and $1 per week additional for each of the three children, making an allowance of $15 per week, not to exceed 400 weeks (Act, § 13 [e] 2), or an amount of $5,000 (Act, § 13 [d]), on which credit was given for the sum paid by the insurance carrier of $518.

The primary question for determination is whether or not the personal injury to plaintiff was sustained by him in an accident arising "out of and in the course of his employment." Act, § 1, p. 206. The term "employer" is defined by statute, and that provision was considered and construed in Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 South. 807.

Plaintiff testified that it was part of the business of his employment to pull rock down from the entry in order to protect life and property used by him in conducting the operation of mining at such point for defendant Majestic Coal Company, and in the attempt to remove a loose rock from the entry of said mine he received his injury. He was corroborated by the witness Linn, who further testified that the company would pay the men for doing "yardage," and the removal of such loose rock was embraced in the term "yardage"; that witness had noticed the rock in question as being loose and dangerous, and had called plaintiff's attention to such condition, as theretofore, on several occasions, he had called the attention of the different employés of the coal company to conditions (such as the instant dangerous, overhanging rock), and that they had removed the same and claimed "yardage" therefor, and that the company had paid for such labor.

The witness Anderson testified that, as mine foreman, he had charge of the ways and works of defendant under the ground in that part of the mine where plaintiff's injury occurred. He explained the system of yardage in operation at such time and place, that the company paid "so much for the coal and so much for the rock" removed; that yardage of rock was measured with a steel tape

every two weeks; that at the time of his operations as a miner plaintiff and his men had driven the work from 16 to 25 feet every two weeks; that, according to the rules and custom in the mine, it was witness' duty to look after the safety of the heading after the yardage was measured; that it was not Pasco's duty to remove the rock, as he was attempting to do, and that witness did not instruct him to do so. On cross-examination the witness admitted that he had employed or paid men to remove or take down rock; that he did not know of the dangerous or loose condition of the rock causing the injury, though he passed the place almost daily; that he had not heard Linn speak of its condition; that "men did often take down these rocks," and that witness, as foreman, "put in extra shifts for them" to pay for the service or labor in removing rock; that, if loose rock was discovered, he would "have Pasco or some one to take it down," and give such employé "an extra shift to do so," and, if he found rock on the heading that appeared to be dangerous, and his man was at another place, he would "often ask the contractor if he had the man handy, to take that down, and pay him so much for it," and, "if a big amount of rock was there, * * * and the contractor's men took it down, and honestly put in the work, "he would allow them pay for it. At various times witness had "given extra shifts to Pasco Polo and his men for taking down rocks."

Defendant's superintendent, Howell, testified that he had confidence in the integrity of Mr. Anderson, the mine foreman, and that when his O. K. came in for extra work done by the men it had always been paid for. This statement, when considered with the other evidence, embraced "yardage" of rock removed within the witness' statement of extra work for which payment was made by defendant. Witness admitted that sometimes the contractor would take down rock that was dangerous.

Summarizing the facts found, they are, in short, that plaintiff discovered the loose rock a short distance from his place, and under which he and the men who worked for or with him in that entry were accustomed to pass; it was defendant's duty (and as its employé mining at the time and place) to keep or make that place safe for the protection of the life and property engaged and employed in defendant's conduct of the operation of mining at such point, and necessary that the track and entry be kept clear. In the attempt to do this by removing the overhanging loose rock, with a knowledge of its danger, it fell on plaintiff, causing his injury and "permanent total disability."

[1-3] In Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 South. 807, it is said that the Alabama statute was largely borrowed from the state of Minnesota, citing the case of State ex rel. Virginia & R. L. Co. v. Dis-

trict Court, 128 Minn. 43, 150 N. W. 211, which was decided December 18, 1914, prior to the adoption of the Alabama statute. The statute, being remedial in nature, should be given a liberal construction to accomplish the purpose intended. In the instant case plaintiff's injuries were found by the trial court to have been the proximate result of an accident arising "out of and in the course of his employment." Without attempting a comprehensive definition it is said that the statute imposing liability embraces all injuries that arise out of and occur while the workman injured is doing what a man under like facts and circumstances, engaged in like employment, may reasonably do (within the time during which he is so employed and at a place where he may reasonably be during that time) in the conduct or projection of such work for the employer, or in the promotion or safeguarding of such business, or for the protection of the men and properties while used or engaged for the purpose of the master's business. And the effect of well-considered cases is that an employé does not step aside from his employment, and is without the protection of the statute, when he is doing a reasonably necessary act at the time and place to the end that the work and business of the employer may be properly conducted or preserved, or the safety and health of the human and physical agencies engaged therein be conserved, and the ways, works, machinery, or plant safeguarded. In such a temporary deviation by the employé from the original employment or a temporary departure by him from his usual vocation, in the performance of some work for the employer, he is yet acting within the course of his employment. This is the spirit and letter of the Employers' Liability Act, that while so acting (in the course of his employment, as we have defined) the employé is primarily acting for the master and not for himself. 1 Honnold on Workmen's Compensation, §§ 105, 114.

Employing the text of Wendt v. Ind. Ins. Comm. of Washington, 80 Wash. 111, 141 Pac. 311; Replogle v. Seattle School Dist., 84 Wash. 581, 147 Pac. 196, Mr. Schneider, in his recent Workmen's Compensation Law (1922), declared that, if the work being done may properly be within the ordinary expectation or contemplation of the parties, as being necessary or proper for the employé to do, to aid in carrying out, either directly or indirectly, the main purpose or business of the employer, even though the employé steps aside from his usual work to do this unusual or isolated work or act, he should nevertheless receive compensation when injured in such work.

The facts of Wendt v. Ind. Ins. Comm., supra, are that a carpenter employed by a large department store, engaged in making repairs, alterations, and fittings, and doing such work about the store, was killed in at-

tempting to turn on the electric power in the workshop where power-driven machinery was employed: held, a workman (within the protection of the Industrial Insurance Act) is employed through the operation and control of a department in which was operated and controlled a workshop employing power-driven machinery, and engaged in a hazardous employment within the definition of the statute. Mr. Schneider further cites authorities on the question whether incidental work of an employé is properly a part of the usual course of an employer's business, and approvingly quotes the following:

"We feel perfectly secure, however, in holding that, where, as in this case, an employé is injured while performing an act which is fairly incidental to the prosecution of a business, and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed." Matter of Larsen v. Paine Drug Co., 218 N. Y. 252, 256, 112 N. E. 725, affirming 169 App. Div. 836, 155 N. Y. Supp. 759, 11 N. C. C. A. note 327.

See, also, Kimbol v. Ind. Acc. Comm., 173 Cal. 351, 160 Pac. 150, L. R. A. 1917B, 595, Ann. Cas. 1917E, 312; Lanigan v. Town of Saugerties, 180 App. Div. 227, 167 N. Y. Supp. 654, 1 W. C. L. J. (1918) 675.

The facts of Larsen v. Paine Drug Co., supra, considered by the New York court, and held to be one of the class of employments covered by the statute of that state, are that plaintiff was a "handy man," who also acted as porter and elevator man, employed by the drug company's establishment, and who had occasion to reach into the elevator shaft for a board, and in so doing lost his balance, falling into the shaft, and was killed. The holdings in Granite Co. v. Willoughby, 70 Ind. App. 112, 123 N. E. 194, and Miner v. Franklin County, 83 Vt. 311, 75 Atl. 653, 26 L. R. A. (N. S.) 1195, were that a servant is entitled to compensation when an injury arising from the risk of the business is suffered by one employé, though not strictly in the line of his obligatory duty, is doing something for the master's benefit in the prosecution of the work. An employé engaged in picking foreign substances from gravel loaded on a railroad car, remained in the car while it was moved from the chute to allow removal of another car, and was injured by falling therefrom: held in the due course of and arising out of the employment, it being shown that defendant's superintendent in charge knew that the men ofttimes remained in the cars when being so moved, and that he did not give instructions concerning what was being done while the car was being moved "to allow the removal of the car." The court says:

"An injury occurs in the course of the employment, within the meaning of the Compensation Act, when it occurs within the period of the employment, at a place where the employé may reasonably be, and while he is reasonably fulfilling the duties of his employment, or is engaged in doing something incidental to it. In re Ayers, 118 N. E. 386; N. K. Fairbanks Co. v. Industrial Commission of Illinois, 285 Ill. 11, 120 N. E. 457." Granite Co. v. Willoughby, supra.

In Hartz v. Hartford, etc., Co., 90 Conn. 539, 97 Atl. 1020, the contributing cause of the death consisted of a strain occasioned by lifting or attempting to lift a barrel, and this fact was taken in connection with the subordinate facts in determining whether the injury arose out of or in the course of the employment. The justice observes of the finding of the commissioner, on consideration of the evidence, that Hartz, not being expressly instructed not to lift the barrel, was a shipping clerk of exceptional energy, and to facilitate his employer's business, and the performance of his own work—

"lifted this barrel," and "if his injury happened in this way it is not an unreasonable conclusion that it arose out of and in the course of his employment. What he was engaged in doing was for his master's benefit, and to push on his work. If a workman depart temporarily from his usual vocation to perform some act necessary to be done by some one for his master, he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself. A rule of law which put such an employé outside his usual course of employment, and so deprived him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness and promote sloth and inactivity in employés. * * * The rule would be impractical. One trade must occasionally overlap another, if the work is to go on expeditiously and productively."

See 1 Honnold on Workmen's Compensation, p. 397, § 114, and authorities.

It is admitted that our statute was drawn under the Minnesota statute (Steagall v. S. S. S. & I. Co., 205 Ala. 100, 87 South. 787), and that it contained the same provisions as section 1, pt. 1, and section 36 (2), subsec. "j," of the Alabama statute (Acts 1919, pp. 206, 237, 238). Mr. Justice Holt, in State ex rel. Duluth, etc., Co. v. District Court, 129 Minn. 176, 151 N. W. 912, said of employer and employé in determining liability within part 2 of the act, providing that in every case of personal injury "caused by accident, arising out of and in the course of employment," etc., that the clause involved is afterwards defined in the same act in these words:

"Without otherwise affecting the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of employment' it is hereby declared: Not to cover workmen except while engaged in, on, or

about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the injury (our statute uses the word 'accident'), and during the hours of service as such workmen, and shall not include an injury caused by the act of a third person or fellow employé intended to injure the employé because of reasons personal to him, and not directed against him as an employé, or because of his employment." Gen. St. Minn. § 8230 (1).

It will be noted that section 36(2), subsec. "j," p. 238, of the Alabama statute, is in this exact language, with the addition at the end thereof:

"And it shall not include a disease unless the disease results proximately from the accident."

In the Minnesota decision of March 19, 1915, construing the aforementioned provisions of the statute, it was said that the trial court had found that De Cook was within the "partial definition quoted when injured"; and the evidence was held to sustain the finding in that respect. The so-called definition of an accident "arising out of and in the course of employment," found in the two provisions of the statute when construed in pari materia, was said to be "rather in the nature of a limitation of the clause than an all-inclusive definition thereof," and the justice then propounds for answer, under the facts of that case, "whether the injury to De Cook arose out of and in the course of his employment." Proceeding with the discussion, Mr. Justice Holt says:

"In England and also in some courts here attempts have been made, with more or less success, to formulate general rules with regard to the shade of distinction between the terms out of and in the course of, as used in the act. All agree that the expressions are not intended to be synonymous. An injury may be received in the course of the employment, and still have no causal connection with it so that it can be said to arise out of the employment. * * * Under the decisions it is reasonably clear that De Cook's injury was received in the course of employment. The doubtful proposition is whether it arose out of the employment.

"We shall not attempt to formulate a definition of the phrase, accidental injury arising out of the employment, except to say that the accident causing the injury must arise out of work or business being done for the master either by direct or implied authority. The trial court evidently took the view that De Cook in good faith believed he was furthering his master's business, and performing an act which he might reasonably be expected to do when he undertook to supply himself with a key. He had never been told that the light bulbs were to be under lock as to him who was charged with the duty of seeing that the broken and defective ones were replaced. He had a variety of matters to attend to in which he, like servants generally, had to rely on the promptings of his own judgment as to details. * * * Hence, when a servant undertakes in the course of his employment, during the proper hours therefor,

and in the proper place, to do something in furtherance of his master's business, and meets with accidental injury therein, the trial court's finding, that the accident arose out of and in the course of employment, should not be disturbed, unless it is clear to us that the ordinary servant, in the same situation, would have no reasonable justification for believing that what he undertook to do when injured was within the scope of his implied duties. If another servant duly engaged in the master's work had had his sight destroyed, instead of De Cook, in this accident, the thought would have been almost irresistible that this law was meant to cover such injury."

To a full understanding of the statute adopted by us, it should be noted that the statement of fact showed that the injured servant, De Cook, worked for relator in the bottling house of its brewery as the foreman's helper, and in a room where electric light bulbs were kept within a wire screen fastened with a lock to which the foreman carried the key. De Cook's duty was to replace light bulbs when necessary, to obtain the key from the foreman, and secure a new bulb, and to take the broken or defective bulb to the foreman. On the day of his injury De Cook was in the basement of the building where other employés were at labor, and one of them handed him what appeared to be a cartridge shell of unusual length. During the working hours of that day De Cook went to the place where the tools and appliances to make repairs were kept, and, the shell appearing to be empty, began to hammer it into a key. It exploded and a fragment thereof destroyed his eye. The insistence was that De Cook had departed from his duties, and was engaged in something at variance with the employer's business; that he had no express or implied authority to make a key to the lock securing the bulbs, and therefore that the accident did not arise "out of" his employment. As we have noted, the Supreme Court of Minnesota gives a liberal construction to this statute, which was in derogation of the common law, and declined to disturb the finding that De Cook met with his accidental injury under such circumstances as it was declared to have been in an accident arising out of and in the course of his employment, the concluding observation of that case being:

"If the attempt to make a key was reasonably within the scope of his employment, the fact that, from ignorance or error of judgment, he made use of dangerous material, not provided by the master, should not necessarily exclude the conclusion that the injury arose out of the employment. The term cannot be restricted to injuries caused from anticipated risks of the service if the law is to be of the benefit intended."

The Minnesota court adhered to its liberal construction of the act in Mahowald v. Thompson-Starrett Co. (1916) 134 Minn. 113, 158 N. W. 913, 159 N. W. 565, where Mr.

Justice Holt, again writing on the subject, declared that a teamster driving for the employer upon a public street, in the discharge of the duties of his employment, being killed by falling beams caused by the negligence of the contractor of the First and Security National Bank Building, was within the statute, and that his injury was that arising out of and in the course of his employment. In State ex rel. Miller v. District Court (1917) 138 Minn. 326, 164 N. W. 1012, L. R. A. 1918F, 881, 1 W. C. L. J. 216, Duluth, etc., Co. v. District Court, supra, was again cited approvingly, and to the effect that the accident must happen while plaintiff was in the course of his employment, and that the evidence must also show that it arose out of the same—"grow out of it or be incidental thereto." Held, that a messenger boy departs from the scope of his employment when he climbs upon a passing vehicle (not a street car) in the street, not owned or controlled by his employer.

The case of State ex rel. Johnson S. & D. Co. v. District Court (April 12, 1918), 140 Minn. 75, 167 N. W. 283, L. R. A. 1918E, 502, 2 W. C. L. J. (July, 1918) p. 95, was that of an employé working in relator's factory who was injured by a missile thrown by a fellow worker in jest. The trial court found that it was customary for some of the workmen (while at work) to throw at one another; that relator knew of the custom, or should have known of it in the exercise of diligence; that the injured employé was at the time engaged in his work, and had not at any time theretofore engaged with his fellow worker in sport of such kind. Held, that the finding that the injury arose out of the employment within the meaning of the Workmen's Compensation Act was sustained. Many authorities are cited, including that of McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. In the latter case injury resulted from a blow administered in frenzy by an intoxicated fellow worker, known by the employer to be in the habit of becoming intoxicated, and in such condition as to be dangerous. Held, that the injury (in the Massachusetts case) arose out of the employment, and that there was causal connection between the injury of the deceased and the conditions under which the defendant required him to work. See notes to L. R. A. 1916A, 309.

In the oft-cited McNicol Case Mr. Chief Justice Rugg defined an injury "arising out of" and "in the course of" his employment, within the meaning of those words in part 2, § 1, of the Massachusetts statute (St. 1911, c. 751, as amended by St. 1912, c. 571), known as Workmen's Compensation Act, stating that these exact words, to be interpreted, are found in the English Workmen's Compensation Act, and that the same doubtless came thence into the Massachusetts statute, and the decisions of English courts before the adoption of the Massachusetts statute were entitled to weight. For the English statute see 43 and 44 Victoria, Ch. 42 (1880), pp. 204–206. Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667. The Chief Justice conceded that it was "not easy nor necessary * * * to give a comprehensive definition of these words (injury arising out of and in the course of his employment) which shall accurately include all cases embraced within the act, and with precision exclude those outside its terms," supplying the definition of an injury as being that received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform, and that "it arises out of" the employment when there is "apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury," which followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment.

[4] This evidence shows that plaintiff had never been ordered not to pull the rock down before that undertaking was initiated or aided by defendant's agent Holley handing plaintiff the iron bar with which to remove it; that no rule of the company was to the contrary, but that its custom implied the authority, in that employés had been doing such work for a time antedating this injury, and were paid therefor by the defendant; that plaintiff had been notified by Linn of the dangerous condition of the roof by reason of the defect, and thereafter, in the attempt by plaintiff to remedy that defect and remove the danger that threatened the miners there engaged at labor for defendant, and the instrumentalities employed for the prosecution of the master's business, plaintiff received his injury. The work of removing the rock was within the period of plaintiff's employment, at a place where such employé and his helpers would reasonably be; and the work was such as that employés may reasonably engage in same for defendant, or incidental to the fulfilling of the duties of the employment and conserving the properties and business of the master. We cannot escape the conclusion that the finding of the trial court should be sustained. Any other or narrowed construction of the statute would not carry out the beneficent purpose for which it was enacted.

There was a tendency of evidence urged as sufficient to cast doubt as to the period of gestation of plaintiff's wife before the birth of the last or third child, for which compensation or support, as provided by statute, was allowed. The positive testimony for plaintiff justifies the finding of the legitimacy of such child and of the fact of its depend-

ence, and is within the provisions of the statute.

The writ of certiorari is denied.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.