(109 So. 377)
GALLOWAY COAL CO. v. STANFORD.
(6 Div. 604.)

(Supreme Court of Alabama. May 27, 1926. Rehearing Granted June 30, 1926.)

1. Master and servant ☞385(11)—Compensation for permanent partial disability should be paid at full rate for proportion of total loss period determinable by extent of injury (Workmen's Compensation Act, § 13[c], [Code 1923, § 7551(c)].

Under Workmen's Compensation Act, § 13 (c) (Code 1923, § 7551[c]), an employee sustaining a permanent partial loss of a member is entitled to compensation at full rate prescribed for loss of that member for that proportion of full prescribed compensation period as extent of loss bears to total loss.

2. Courts ☞89.

Under doctrine of stare decisis, judicial decisions deliberately rendered should not be set aside, unless clearly wrong, or violative of sound principle or social morality.

3. Statutes ☞226.

Legislature adopting statute of another state or country is presumed to have intended construction prevailing in place from which statute was taken.

4. Statutes ☞225¾.

Substantial re-enactment of statute having fixed judicial construction is a legislative adoption of that construction.

5. Master and servant ☞385(11)—Period of total disability must be deducted from period fixed for permanent partial disability, in determining compensation for permanent partial disability (Workmen's Compensation Act, § 13[c], [Code 1923, § 7551(c)]).

Under Workmen's Compensation Act, § 13 (c) (Code 1923, § 7551[c]), time of total disability of employee sustaining a permanent partial disability must be deducted from compensation period fixed for permanent partial disability rather than from period allowed for total loss in determining period during which compensation for partial disability is payable.

Miller and Sayre, JJ., dissenting.
Bouldin, J., dissenting in part.

Certiorari to Circuit Court, Walker County; R. L. Blanton, Judge.

Proceeding under the Workmen's Compensation Act by James T. Stanford, claimant, opposed by the Galloway Coal Company, employer. To review a judgment of the circuit court granting an award, the employer petitions for certiorari. Writ granted, and judgment reversed and rendered.

T. A. Saulsbury and Stokely, Scrivner, Dominick & Smith, all of Birmingham, for appellant.

Percy, Benners & Burr, of Birmingham, amici curiæ.

In cases of permanent partial disability, due to injury to a member, compensation therefor shall be paid at the rate prescribed for loss of the member, but only for that proportionate part of the time prescribed for the loss of the member as the injury bears to the total loss of the member. Code 1923, § 7551 (c); Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138. Whenever a permanent partial disability is concurrent with a temporary total disability, the number of weeks allowed for the latter, if less, must be deducted from the number of weeks allowed for the former. Ex parte Diniaco & Bros., 207 Ala. 685, 93 So. 388; Tenn. C. I. & R. Co. v. Shelby, 214 Ala. 87, 106 So. 499; Ex parte American, etc., Co., 19 Ala. App. 547, 98 So. 817.

Curtis, Pennington & Pou and W. C. Davis, all of Jasper, for appellee.

The Compensation Act is to be liberally construed in favor of the employee. Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728; Ex parte L. & N., 208 Ala. 216, 94 So. 289; Ex parte Central Iron & Coal Co., 209 Ala. 22, 95 So. 472; Ex parte Central Iron & Coal Co., 212 Ala. 367, 102 So. 797; Ex parte Rosengrant, 213 Ala. 202, 104 So. 409; Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648. Diniaco and Jefferson Slag Company Cases should be overruled. Ex parte Gadsden Car Works, 211 Ala. 82, 99 So. 725; Tenn. C. I. & R. Co. v. Shelby, 214 Ala. 87, 106 So. 499.

SOMERVILLE, J. [1] The minority opinion of Mr. Justice Miller, concurred in by Mr. Justice Sayre, attacks, and would overrule, the cases of Ex parte Diniaco & Brothers, 207 Ala. 685, 93 So. 388, and Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138, as to their construction of that part of subdivision (c) of section 13 of the Workmen's Compensation Act (now subdivision [c] of section 7551 of the Code) relating to compensation for partial permanent disability not specially provided for by the schedule.

The act (subdivision [c]) schedules a long list of disabilities, including the complete loss of members of the body, for which a uniform rate of compensation is provided—the period of compensation in each case varying with the nature and gravity of the loss. It then provides that—

"In cases of permanent disability, due to injury to a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid *at the prescribed rate* during *that part* of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury * * * bears to its total loss." (Italics supplied.)

The rate prescribed in all of those cases is "50 per cent. of the workman's average weekly earnings," and the period of compensation for the total loss of a foot is 125 weeks. The Diniaco Case, supra, construed the above provision as meaning that the workman who suffers, say (as here), a 30 per cent. loss of one foot, and whose average weekly earnings were $30, must be compensated at the rate of $15 a week for three-tenths of 125 weeks; that is, for a period of 37½ weeks. The minority opinion holds that he must be compensated at the rate of three-tenths of $15, that is, $4.50, a week for the full period of 125 weeks.

In am unable to find in the language of the act any rational basis for this difference of opinion. A simple statement of the terms used vindicates the holding of the Diniaco Case as effectively as the most elaborate argument could do. Payment "at the prescribed rate" does not, and cannot, mean payment at a fraction of that rate; and payment during a proportionate "part of the time specified in the schedule for the total loss of the * * * members" does not, and cannot, mean payment during the whole of that time. These are simple, elemental propositions, which ought to be beyond the reach of judicial casuistry.

If, indeed, the language in question went no further than to provide in general terms for compensation proportionate to the injury, the whole scheme and structure of the act would forbid the construction demanded by the minority opinion, because the rate prescribed is unvarying, while the period of compensation varies for each separate injury according to its nature and extent. A specific instance is found at the twelfth line of subdivision (c) of section 7551 of the Code:

"The loss of the first phalange of the thumb, or of any finger, shall be considered as equal to the loss of one-half of such thumb, or finger, and compensation shall be paid at the prescribed rate during one-half of the time specified above for such thumb or finger."

Thus did the Legislature make a practical exposition of the clear and simple scheme intended to be used for computing compensation —a uniform weekly rate to be paid for a greater or less number of weeks.

Under acts not explicit like ours, but prescribing proportionate compensation in gen-

eral terms, the courts of Iowa and New Jersey have applied the percentage of disability to the period of compensation, and not to the rate. Spurgeon v. I. & M. Granite Wks., 196 Iowa, 1268, 194 N. W. 286; Orlando v. F. Ferguson & Son, 90 N. J. Law, 553, 102 A. 155, 156.

I submit, as logically indisputable, the proposition that the terms of the provision under discussion present a double specification of rate and time which demands a proportion of the time and the whole of the rate as a basis for the computation, and that the language used to express that legislative intention is so clear and precise that nothing could be added to improve its clarity and precision.

But, if the meaning of the provision were not thus unmistakably clear, the proposal of the minority opinion to overrule the Diniaco and Jefferson Slag Co. Cases, supra, is indefensible for three distinct reasons, based upon three distinct principles to which this and all courts have repeatedly professed allegiance.

[2] 1. The Diniaco Case was decided on May 11, 1922, more than four years ago, and it was deliberately followed by the Jefferson Slag Co. Case on April 19, 1923. The doctrine of stare decisis forbids that judicial decisions deliberately rendered should be set aside, unless they are clearly wrong and violative of sound principle or social morality. It expresses the conservatism of the law, and underlies its entire structure. If it be disregarded, there can be no system of law, but only chaos reflecting the vacillating opinions of the judges who come and go.

2. Our Workmen's Compensation Act is founded almost entirely upon the Minnesota act (Gen. St. 1923, §§ 4261–4337). Section 13 of our act (section 7551 of the Code) is a literal copy of the Minnesota act. Two years and a half before our act was adopted, viz., on February 16, 1917, the Supreme Court of Minnesota clearly and definitely construed the identical provision here under consideration exactly as we construed it in the Diniaco Case. Said the court:

"There was a permanent partial disability 'due to an injury to a member [a foot], resulting in less than total loss of such member.' Compensation should have been awarded at the prescribed rate (50 per cent. of daily wages, or $7.50 per week) for such a part of 125 weeks as the extent of the injury to the foot bore to its total loss. For what period of time this would be it is impossible for us to say on the record before us." State ex rel. John Wunder Co. (Globe Indemnity Co.) v. District Court Hennepin County, 136 Minn. 147, 150, 161 N. W. 391, 392.

The same construction was followed in the later cases of Chiovitte v. Zenith Furnace Co., 148 Minn. 277, 181 N. W. 643, and Hellie v. Am. Ry. Express Co., 157 Minn. 456, 196 N.

W. 566. In both cases the court applied the percentage of loss categorically to the period of payments, but without discussion, because, it may be justly assumed, the language of the act was deemed too plainly to that effect to permit of discussion. The Minnesota court is a court of recognized ability and high standing, and it has been studying and construing this act for 20 years or more. Its judgment as to its proper meaning is entitled, I think, to the highest consideration.

[3] The general rule of construction is that, "where the Legislature enacts a provision taken from a statute of another state or country, in which the language of the act has received a settled construction, it is presumed to have intended that such provision should be understood and applied in accordance with that construction." 36 Cyc. 1154–1156, and cases cited under note 81; Kennedy v. Kennedy, 2 Ala. 571. In Fuller v. Lanett, etc., Co., 186 Ala. 117, 65 So. 61, it was said that such a construction "is at least persuasive that our Legislature intended to adopt it as construed in the jurisdiction from which it was borrowed." Specifically, this court, applying this rule, has twice followed the construction given to particular sections of this act by the Supreme Court of Minnesota. Ex parte W. T. Smith Lbr. Co., 206 Ala. 485, 90 So. 807; Ex parte Mt. Carmel Coal Co., 209 Ala. 519, 96 So. 626. I can see no reason for the repudiation of that presumption and rule of construction in this case, and none has been suggested.

[4] 3. There is another rule of construction which this court has uniformly recognized for nearly three-quarters of a century, and to which it has always accorded the obligation of a mandate:

"It is a settled rule, that, in the adoption of the Code, the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction." Morrison v. Stevenson, 69 Ala. 448, quoted with approval in Wood, etc., Co. v. Cocciola, 153 Ala. 555, 45 So. 192.

So, in Barnewall v. Murrell, 108 Ala. 366, 377, 18 So. 831, 836, it was declared, per Brickell, C. J.:

"It is an elementary rule of statutory construction, that re-enacted statutes must receive the known, settled construction which they had received when previously of force, for it must be presumed the Legislature intended the adoption of that construction, or they would have varied the words, adapting them to a different intent. Sutherland Stat. Con. § 256. The rule has been of frequent application to the Code; in its construction, uniformly, the Legislature has been presumed to have known the settled construction of statutes, of which there was a substantial re-enactment, and to have intended the adoption of such construction."

The rule was clearly stated and applied in Duramus v. Harrison, 26 Ala. 327, decided in 1855, and, as Judge Brickell observed, has never been disregarded. The cases are collected in 11 Mich. Dig. 1114, and in 14 Mich. Dig. 894. .

Our Workmen's Compensation Act was adopted August 23, 1919. The provision here in question was construed by the Diniaco Case in May, 1922, and that case was expressly followed by the Jefferson Slag Co. Case in April, 1923. It had, therefore, received a fixed and known judicial construction for 15 months prior to its re-enactment by the Legislature on August 17, 1923, as a part of the Code of 1923. I can conceive of no reason, and none has been suggested, for a repudiation of this principle of construction in the instant case.

[5] There is one other principle of the Diniaco and the Jefferson Slag Co. Cases, which is rejected by the minority opinion, and also by the opinion of Mr. Justice Bouldin, and which therefore requires some further discussion.

In both of those cases there was an ascertained period of total disability, followed by an ascertained percentage of permanent disability of a member—a permanent partial disability under subdivision (c) of section 13 of the act (of section 7551 of the Code). It was held that these periods of disability, resulting from a single injury to a member, were not doubly compensable; but, when compensation is had for the period of total disability, that period, if less, must be deducted from the period allowed for the permanent partial injury, and compensation allowed only for the remainder of that period. The proper method of computation was declared to be to deduct the period of compensated total disability from the period fixed by the act for the permanent partial disability. In the instant case, the periods compensated for, as for total and temporary partial disability under subdivisions (a) and (b), using approximate figures, amount to 27 weeks. For permanent partial disability from the total loss of a foot the period of compensation is 125 weeks. For a 30 per cent. loss of a foot the period of compensation is that proportion of 125 weeks, or 37½ weeks. Deducting 27 from 37½, the additional period for compensation is 10½ weeks at the prescribed rate, yielding $155.

This is the exact method pursued by the Supreme Court of Minnesota in the case of Chiovitte v. Zenith Furnace Co., 148 Minn. 277, 181 N. W. 643, in determining the balance of payments due for permanent partial disability from a 68 per cent. loss of an eye, after payments for a period of 8 weeks for a preceding total disability from the same injury. There the court first took 68 per cent. of 100 weeks (the period allowed for total loss of an eye), or 68 weeks, and then deducted the 8 weeks from the 68 weeks, leaving 60 weeks for additional payments as for the permanent partial disability.

I can find no warrant in the provisions of the act for pursuing the other method suggested, viz. deducting the period of compensation as for total temporary disability from the full period allowed for a total loss of the member. That method is, it seems to me, purely arbitrary, since in the case of a fractional loss of a member we are not at all concerned with the period allowed for its total loss, except as a basis for calculating the period allowed for a fractional loss.

This becomes the more clearly apparent if we elaborate the general provision for the proportionate compensation of a fractional loss of a member, and actually write into the schedule a table of fractional losses from 1 to 99 per cent., with the proportionate number of weeks for each. In the elaborated schedule we would find "for 30 per cent. loss of a foot, 50 per cent. of the average weekly earnings during 37½ weeks," and manifestly we would have nothing to do with the period of 125 weeks for any purpose whatever.

But, in any case, the construction given to this provision of the act in this particular by the Diniaco Case was adopted by the Legislature when it re-enacted the law unchanged as a part of the Code of 1923 (see the rule and authorities discussed above, and this court is bound to leave the law and its construction as thus settled until the Legislature sees fit to change it.

Inequalities and incongruities have been noted by the courts in most, if not all, of the compensation acts of the several states. They seem to be inherent in the number and complexity of the provisions of such acts, but their correction and removal is a matter for the Legislature, and cannot be undertaken by the courts. The rule of liberal construction in favor of the workman is fully recognized, but plain meanings cannot be avoided under the pretense of liberal construction.

Using the exact figures shown by the record (see the dissenting opinion of Miller, J.), the employé here was entitled, under the method of computation above approved, to $216.22 for 14⅞ weeks; to $163.67 for 13 weeks; and to $143.57 for 9⅞ weeks—in all, $523.67. It appears that the employer has paid $562.50. The employé's claim has therefore been fully satisfied, and the judgment of the trial court directing further payments is erroneous.

The judgment will be reversed, and one will be here rendered denying the additional compensation claimed by plaintiff, and discharging the defendant from further liability in that behalf.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.

SAYRE and MILLER, JJ., dissent.
BOULDIN, J., dissents in part.

THOMAS, J. (concurring). A careful consideration of the authorities in this state and in Minnesota prevents the 'adoption of the construction now sought to be given the statute by the minority.

The cases in this state are uniformly to the effect that—

"re-enacted statutes must receive the known, settled construction which they had received when previously of force; for it must be presumed the Legislature intended 'the adoption of that construction, or they would have varied the words, adapting them to a different intent. Sutherland Stat. Con. § 256. The rule has been of frequent application to the Code; in its construction, uniformly, the Legislature has been presumed to have known the settled construction of statutes, of which there was a substantial re-enactment, and to have intended the adoption of such construction. 1 Brick. Dig. 349, § 2." Barnewall v. Murrell, 108 Ala. 366, 18 So. 831; Herrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422.

The cases of Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138 (decided in April, 1923), and Ex parte Diniaco & Bros., 207 Ala. 685, 94 So. 388 (decided in May, 1922), were before the adoption of the Code of 1923. And section 7551 of the Code was incorporated in the Code of 1923 with the construction therefor given the part of the statute in question now for construction before us. The Compensation Act of August 23, 1919, and the provision for construction, was presumptively enacted subject to the constructions thereof theretofore given by the courts of Minnesota. The provision of the statute in question was construed in State ex rel. John Wunder Co. (Globe Indemnity Co.) v. District Court (February 16, 1917) 136 Minn. 147, 161 N. W. 391, in harmony with the construction placed thereon by this court. Diniaco & Bros. Case, supra.

I adhere to the conclusion announced by the majority, and that prevailing in this court since May 11, 1922, the date of the decision in Ex parte Diniaco & Bros., supra; Ex parte W. T. Smith Lbr. Co., 206 Ala. 485, 90 So. 807; Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728.

MILLER, J. (dissenting). This is an application by the Galloway Coal Company, a corporation, for writ of certiorari to review the judgment and proceedings in the case of James T. Stanford against it under the Workmen's Compensation Act.

The Galloway Coal Company admits that the plaintiff was injured in an accident while in the employ of the defendant about December 20, 1923, and plaintiff was disabled as a result of the injuries received for a certain length of time, and its insurance carrier has paid plaintiff the sum of $572.50, and it refused to pay any more, because it was advised that it had paid plaintiff all that was due him. So this suit arose over a dispute between the plaintiff and defendant in regard to the extent of the disability of the plaintiff from the injuries, and this was the only question at issue.

The court found the injuries of plaintiff consisted of a broken bone in his left leg below the knee and the fracture of two of the bones in his left foot; that his average weekly wage was $26.22; and that he has more than three (six) totally dependent children. The court further found the plaintiff from these injuries in his foot was totally disabled temporarily from December 20, 1923, to April 1, 1924, and awarded him $15 per week during that time as compensation, which aggregated $216.22. This award was correct, as 50 per cent. ($13.11) of the average weekly earnings received ($26.22) would exceed the maximum compensation of $12 per week allowed, and this maximum per week is allowed to be increased from $12 to $15, the amount fixed by the court when the employé, as in this instance, has three or more totally dependent children. The statute provides:

"This compensation shall be paid during the time of such disability, not, however, beyond 300 weeks." Section 7551, subd. (a) and (h).

The court also found this injury to plaintiff's foot partially disabled him temporarily for 13 weeks from April 1, 1924, to July 1, 1924, and that his earning capacity was decreased 80 per cent. during that time on account of said injuries, and awarded him $12.-59 per week during that time which aggregated $163.67. This award was correct. This 80 per cent. of $26.22, the average weekly earnings, would make his average weekly earnings $20.98 on account of this partial disability, and 50 per cent. of this $20.98 would be $10.49. This 50 per cent. maximum for the employé is allowed to be increased to a 60 per cent. maximum, as he has more than three totally dependent children. Under this statute (subd. [h]) the 50 per cent. maximum may be increased 5 per cent. for each totally dependent child until such per cent. shall reach a maximum of 60 per cent. Sixty per cent. of $20.98, the average weekly earnings, would be $12.59 per week, the amount fixed by the court.

This statute (section 7551, Code 1923, subd. [b]), provides:

"In all cases of temporary partial disability the compensation shall be fifty per cent. of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition. And this compensation shall be paid during the period of such disability, not, however, beyond three hundred weeks."

This 50 per cent. did not make the weekly compensation allowable reach the maximum of $12 or over per week allowed to the employé. So he was entitled to 50 per cent. of this $20.98. This 50 per cent. under subdivision (h) of this section could be increased to a maximum of 60 per cent. for the employé, as he had at the time of the injury, and during that time, more than three totally dependent children under the age limit. This part of subdivision (h) provides:

"Wherever in this section there is a provision for 50 per cent., such per cent. shall be increased five per cent. for each totally dependent child of the employé under the age of eighteen years at the time of the injury to the employé until such per cent. shall reach a maximum of sixty per cent."

In this award the court followed the statute. Section 7551, Code 1923, subds. (b), (h).

The court also found this injury to plaintiff's foot caused a permanent partial disability, and his earning capacity will be thereby permanently decreased to the extent of 30 per cent., and awarded him compensation from July 1, 1924, for a period of 97⅞ weeks at the rate of $4.72 per week.

Under the statute (section 7551, subd. [c]), "for permanent partial disability the compensation shall be based upon the extent of such disability." The court by its order fixed from the evidence the extent of the permanent partial disability at 30 per cent. decrease. This was the proper method in order to arrive at the compensation. This subdivision (c) also provides:

"In cases of permanent disability, due to injury to a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss."

The time and compensation fixed for the loss of a foot is 50 per cent. of the average weekly earnings during 125 weeks. Subdivision (c) of section 7551, Code 1923.

The court had fixed compensation for the temporary total disability for a period of 14⅞ weeks from December 20, 1925, to April 1, 1926, and for temporary partial disability for a period of 13 weeks from April 1st to July 1st, and there remained only 97⅞ weeks of the 125 weeks' period for compensation for the permanent partial disability, which was the proper time therefor, as fixed by the court under the statute. The court fixed the compensation for the permanent partial disability at $4.72 per week for 97⅞ weeks. In this the court did not err. The 30 per cent. decrease by the permanent partial disability in the average weekly earnings of $26.22 would be $7.87, and of this $7.87 he was entitled to 50 per cent. weekly, plus the per cent. allowable for the total dependent children, which would make the maximum per cent. allowable 60 per cent., as hereinabove shown; and 60 per cent. of $7.87 would be $4.72, the amount allowed by the court to plaintiff per week for 97⅞ weeks. The court allowed the defendant credit for the full amount paid by it to plaintiff, and ordered it to pay the balance to the plaintiff at times and in amounts not necessary to be mentioned herein, as no objection is raised to that part of the judgment.

There is no permanent and total loss of the use of this foot of plaintiff from the injury, but there was an immediate, temporary total disability from it for a period of 14⅞ weeks, and there was immediately thereafter a temporary partial disability from it to the extent of 80 per cent. decrease for 13 weeks, and thereafter there was a permanent partial disability from it to the extent of 30 per cent. decrease in the average weekly earning for 97⅞ weeks and longer. It will be observed the court allowed for temporary total disability under subdivision (a), and for temporary partial disability under subdivision (b), which in extent exceeded the permanent partial disability, and for permanent partial disability under subdivision (c), which was less in extent than the temporary partial disability. The court allowed the compensation permitted by the statute for each disability, but the time of neither overlapped the other, and the entire time for which compensation was allowed did not exceed any of the periods fixed therefor by the statute. Section 7551, Code 1923, subds. (a), (b), (c), (h).

This judgment under the facts found is in accord with the intent and purpose of the statute, and the interpretation placed on it by this court in Tennessee C. & I. Co. v. Shelby, 106 So. 499.[1] But the rule laid down in Ex parte Diniaco Bros., 207 Ala. 685, 93 So. 388, and followed in Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138, for fixing the time and awarding compensation in case of permanent partial disability, when there is a temporary total disability, concurrent in part, is contrary to the statute, and contrary to this construction of it, and the holdings in those cases to that extent should be overruled. The maximum time (125 weeks) for compensation for permanent partial disability fixed by the statute cannot be reduced, except by deducting therefrom the time, if any, allowed compensation for either temporary total disability or temporary partial disability, or both. The percentage of loss in the average weekly earnings caused by the permanent partial disability from the injury can be used only in ascertaining the amount of compensation, which should be awarded, and has no bearing on, and no place in, fixing the time for which the compensation should be paid. Authorities, supra.

The construction of this statute (section

---

[1] 214 Ala. 87.

7551 [a], [b], [c], Code 1923) by the writer as applied to the facts of this case will produce the following results:

[a] Temporary partial disability for 14¾ wks. at $15 per wk............................... $216 22
[b] Temporary total disability for 13 wks. at $12.59 per wk............................... 163 67
[c] Permanent partial disability for 97¾ wks. at $4.72 per wk............................... 460 53
Total weeks, 125; total pay.......... $840 42

The practical application of the construction given this statute by this court in the case of Diniaco Bros., supra, as applied to the facts in this case, would produce the following results:

[a] Temporary total disability for 14¾ wks. at $15 per wk. ............................... $216 22
[b] Temporary partial disability for 13 wks. at $12.59 per wk............................... 163 67
[c] Permanent partial disability for 9.07 wks. at $15 per wk. ............................... 136 05
Total weeks, 37.50; total pay........ $515 94

By this construction the injured employé will lose $840.42, less $515.94, making $324.48. The actual loss to this employé by this rule is the sum of $324.48. It will be observed by this construction of the statute that this employé receives for total disability $15 per week, and for temporary partial disability, which decreases his earning capacity 80 per cent., the sum of $12.59 per week, and for a 30 per cent. permanent partial disability he receives $15 per week. Under subdivision, (b) for temporary partial disability decreasing his weekly earnings 80 per cent. he will receive weekly pay the sum of $12.59, and yet under subdivision (c) for permanent partial disability decreasing his weekly earnings only 30 per cent. he will receive the sum of $15 per week, the same pay as for total disability. This construction of the statute leads to a result contrary to the intent of the Legislature when given a practical application. As his ability from the injury to work increases, his compensation per week is increased instead of diminished. The time is computed under that rule in the Diniaco Bros. Case, supra, in this case thus: 30 per cent. of 125 weeks is ascertained, which is 47½ weeks, and from this 47½ is then deducted the 14¾ weeks and the 13 weeks, and compensation is allowed for the remaining time (9.07 weeks) for permanent partial disability.

This construction of this statute by this rule as to compensation and time for payment for permanent partial disability was not intended by the Legislature. It works a great injustice to this employé. It deprives him of $324.48, which is justly due him under the statute. Authorities supra.

This court, in Ex parte Cent. I. & C. Co. 209 Ala. 22, 95 So. 472, in writing of this act, correctly stated:

"This Act, being remedial in nature, will be given a liberal construction to accomplish the purpose of the enactment. Ex parte Majestic Coal Co., 208 Ala. 86 [93 So. 728]."

This rule in the Diniaco Bros. Case, 207 Ala. 685, 93 So. 388, and followed by the court in this case, is not a liberal, but is a strained, construction of the act, which results in great injury to the rights of the employé. The judgment is free from error. It should be affirmed and the writ denied.

SAYRE, J., concurs with this dissenting opinion.

BOULDIN, J. (dissenting). This is a workmen's compensation case wherein the claimant suffered a temporary total loss of the use of one foot for 14¾ weeks, followed by a permanent partial loss as follows: Loss of 80 per cent. of its use for 13 weeks, and a 30 per cent. loss of use thereafter, all resulting from the same injury.

The inquiry here is as to amount of compensation due and the manner of payment.

The "prescribed rate" of weekly compensation for loss of a member is 50 per cent. of the average weekly earnings, subject to the maximum and minimum named in the statute. This weekly rate of payment is the same throughout the schedule without regard to what member is lost. Thus the same weekly payment, 50 per cent. of average weekly earnings, is prescribed for the loss of a toe, as for the loss of both legs. The difference in disability resulting from such injuries is compensated in prescribing the period or number of weekly payments. Thus the loss of a toe is compensated by 10 weekly payments, and the loss of both legs by 400 such payments.

The same rule holds as to partial loss of a member or its use. Thus:

"The loss of the first phalange of the thumb, or of any finger, shall be considered as equal to the loss of one-half of such thumb, or finger, and compensation shall be paid at the prescribed rate during one-half of the time specified above for such thumb or finger."

Making the same rule general in application to loss of members, it is enacted:

"In cases of permanent disability, due to injury to a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss." Code, § 7551 (c).

The trial court erred in awarding reduced compensation for the full period of partial disability instead of full pay for a reduced period. This rule was applied to the like provision in the Minnesota law at the time our statute was enacted (State ex rel. John Wunder Co. [Globe Indemnity Co.] v. District

Court, 136 Minn. 147, 161 N. W. 391), and declared by this court in Ex parte Diniaco & Bros., 207 Ala. 685, 93 So. 388, and Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138.

But in the application of this rule I think there was error in our cases above in this: The period or number of weekly payments for the partial loss of use of the member was ascertained by taking the required per cent. of the full period of compensation, and deducting therefrom the number of weeks of total loss of its use. The proper method is to deduct the number of weeks of total disability from the full compensation period, 125 weeks in this case, then compute such per centum of the remainder as represents the permanent partial loss of the use of the limb.

To illustrate: In case the total loss of the use of a foot continues 50 weeks, and thereafter a permanent partial loss of 40 per cent. by the method employed in the Jefferson Slag Co. Case the result would be this: 40 per cent. of 125 weeks equals 50 weeks. Now, if he has been compensated 50 weeks for total loss, he will receive nothing for his permanent partial loss of the use of the member. In other words, the compensation would be precisely the same as in case of a total loss of its use for 50 weeks followed by complete restoration. This violates the general provision of subdivision (c), § 7551, saying:

"For permanent partial disability the compensation shall be based upon the extent of such disability."

To give proper effect to this provision and the spirit of the statute throughout, compensation in such case should be 50 weekly payments for total loss of use, then 40 per cent. of 75, or 30 weekly payments for the period of partial loss.

My conclusion is that in cases not of concurrent injuries, but of temporary total loss of use of the member followed by permanent partial loss of use from same injury, it is the purpose to compensate for the period of total loss, then for permanent partial loss for the remainder of the compensation period, not at a reduced weekly rate, but at the "prescribed rate," for a reduced period equal to the per cent. of loss of the use of the member.

The cases of Ex parte Diniaco & Bros. and Ex parte Jefferson Slag Co., supra, should, in my opinion, be modified to this extent.

Manifestly, when correctely calculated, the amount of compensation ultimately paid would be the same whether the payments be made for full time at a reduced rate or for reduced time at full rate, figured on the same percentage basis. This result, however, was somewhat defeated in the manner in which calculations were made by the court below.

A restatement of the matter leads to the following results:

In my opinion, the compensation due the employé under the finding of facts is as follows:

| | |
|---|---:|
| For 14 weeks temporary total loss of use of foot—14 weekly payments of $15 each........ | 210 00 |
| For 13 weeks of 80% loss of use of foot—10.4 weekly payments of $15 each................. | 156 00 |
| For 98 weeks of 30% permanent loss of use of foot—29.4 weekly payments of $15 each...... | 441 00 |
| Total ........................................ | $807 00 |
| Credit amount heretofore paid................ | 562 50 |
| Balance due ................................. | 244 50 |

The well-known and well-founded rule of statutory construction to the effect that the re-enactment of a statute having a fixed construction is a legislative adoption of such construction I would in no wise question. The rule rests upon the presumption that the construction is known to, and has been duly considered by, the Legislature. For this presumption to arise in full force, it should appear the statute has received a fixed construction on the point involved; that the court had in mind, considered and passed upon, that point: that a reading of the opinion would direct thought to the immediate point of construction now presented.

Our former cases above cited directly and expressly decide that compensation in this class of cases is by weekly payments at the full rate prescribed for a reduced period, not payment at a reduced weekly rate for the full period. In this regard, not only does the rule of construction upon re-enactment apply, but in my opinion these decisions follow the plain language of the statute, the special schedule which deals with loss of members, including loss of use thereof.

But I find nothing in the decisions showing that the court considered, or that the reader would note, the difference in result of application of that rule by the method of calculation employed under varying facts. It now appears that in the case before us the employé would receive added compensation for the permanent partial loss of 30 per cent. of the use of his foot, some 10 weekly payments of $15 each by one method of calculation, and 29.5 weekly payments by the other method. I think the latter the correct method. We are dealing with a new statute running into the future. Having in mind the aim of the statute and the liberal construction it everywhere receives, it is my opinion the construction contended for in this opinion should be now adopted.