JOEL BROADBENT'S (dependent's) CASE.

Suffolk.    November 30, 1921. — March 1, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Dependency. *Evidence,* Record in office of city clerk of report by medical examiner.

At the hearing of a claim under the workmen's compensation act, it appeared that the employee was a "counter man" at night at an "Army and Navy Y. M. C. A.," and that his duties were to sell checks entitling the buyer to the use of the dormitory, to sell candy, cigarettes and other articles and "to keep the enclosure clear;" that there were two fellow employees with co-ordinating duties; that there was more or less disorder; that, while trying to quell a disturbance in the enclosure which it was his duty to keep clear, the employee received an injury which resulted in a cerebral hemorrhage from which he died. *Held,* that a finding was warranted that at the time of his injury the employee was acting within the scope of his employment and that the risk of assault was a risk of such employment.

At the hearing above described, there was admitted without objection the death certificate of the medical examiner, which had been filed in the office of the city clerk and which stated as the cause of the death that "the cause and

manner thereof are as follows: cerebral hemorrhage, blow on the forehead . . . blow probably had no direct effect in producing the hemorrhage; the excitement which followed probably a contributing factor;" and there was medical evidence warranting a finding that the death of the employee was due to cerebral hemorrhage resulting from the blow and the attendant excitement. Such a finding was made. *Held*, that the certificate was admissible under G. L. c. 46, § 19, and was *prima facie* evidence of the facts therein recorded. .

At the hearing of a claim under the workmen's compensation act by the widow of an employee whose life was lost in 1919 within the provisions of the act, it appeared that at the time of the death of the employee he and the claimant were living apart and the only evidence as to the reason therefor was in her testimony given in a deposition, in which she testified to a marriage in England in 1892 and a married life there of five and one half years during which one child was born to them; that during that time he had had improper relations with other women, had maltreated her and had earnings insufficient to support the family, so that. she had worked; that he left for America in November, 1897; that she never actually declined to accompany him, and that "When he asked me to go to America, I said I would, if he would alter his ways. His reply was 'that he would please himself,' to which I made no answer;" that, in April, 1906, she learned that after he came to America "he had contracted a bigamous marriage." The bigamous marriage was contracted in 1900. Findings by a single member of the Industrial Accident Board, affirmed and adopted by the full board, were that, in view of the facts in the record, the circumstances in which the claimant had separated from the employee and that they lived apart for twenty-two years without any effort on her part to communicate with him, the claimant had not sustained the burden of proving that she was living apart from the employee for justifiable cause as required by St. 1911, c. 751, Part II, § 7, as amended by Sts. 1914, c. 708, § 3; 1919, c. 204. *Held*, that the finding was warranted, it not being necessary to believe all of the testimony of the claimant.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board, affirming and adopting findings and rulings of a single member of the board, dismissing claims, filed under the statute by Sarah Broadbent, widow, and by William H. Broadbent Bishop, illegitimate child, of Joel Broadbent, who died on November 23, 1919, as the result of injuries received in the early morning of November 16, 1919, while he was in the employ of Massachusetts Trustees International Y. M. C. A. for Army and Navy Work, Inc.

In the Superior Court, the case was heard by *Lawton*, J., the widow's claim only being presented. Material facts and evidence appearing in the record are described in the opinion. By order of the judge, a decree was entered, reciting that the deceased employee, Broadbent, was acting within the scope of his employ-

ment at the time of the injury, and that the risk of assault was a risk of his employment; that the death of Broadbent resulted from cerebral hemorrhage induced by a blow on his face and the resultant excitement; that the claimant, widow of Broadbent, had not sustained the burden of establishing by a fair preponderance of credible evidence that she was living apart from her husband for justifiable cause or because he had deserted her; that the widow's claim was dismissed. The widow appealed.

C. J. O'Brien, (R. L. Osborne with him,) for the widow.

J. T. Connolly, (A. V. Sullivan with him,) for the insurer.

CROSBY, J. The claims for compensation in this case in behalf of the employee's widow and illegitimate minor son arise out of a personal injury received by the employee early in the morning of November 16, 1919, which, it is claimed, resulted in his death. At the time of his injury he was employed at the "Army and Navy Y. M. C. A. in Charlestown" as a "counter man."

1. The single member of the Industrial Accident Board made the following findings: that Broadbent's duties were to sell checks entitling the buyer to the use of the dormitory maintained there, and to sell candy, cigarettes and other articles; that three men including the deceased were employed there at night, the other two being Kinney and Best; that Best was required to collect the checks from those who used the dormitory; that Kinney, as well as the deceased, sold checks; that there was more or less disorder; that while trying to quell a disturbance the deceased was struck on the right side of his face by a petty officer in the United States Navy, and received an injury which resulted in cerebral hemorrhage from which he died on November 23, 1919. There was evidence from which it could have been found that Kinney was in charge, that the deceased came from behind the counter and endeavored to stop the disturbance and that Kinney ordered him to go back. The single member found that such order was not given until after Broadbent had been struck, and that it was a part of his duties "to keep the enclosure clear and it was within this enclosure that he was hurt, and while trying to clear the enclosure." The single member further found that at the time of his injury Broadbent was acting within the scope of his employment and that the risk of assault was a risk of such employment; it is plain that these findings were warranted.

2. The single member also found that the employee's death was the result of cerebral hemorrhage. The death certificate of the medical examiner filed in the office of the city clerk states that "the cause and manner thereof are as follows: cerebral hemorrhage, blow on the forehead . . . blow probably had no direct effect in producing the hemorrhage; the excitement which followed probably a contributing factor." This certificate was admitted without objection. We are of opinion that it was admissible under R. L. c. 29, § 20 (see now G. L. c. 46, § 19), and is *prima facie* evidence of the facts recorded. *Shamlian* v. *Equitable Accident Co.* 226 Mass. 67. Apart from the certificate of the medical examiner, there was other medical evidence from which it could have been found that the death of the employee was due to cerebral hemorrhage resulting from the blow and the attendant excitement.

3. At the time of the employee's injury and death, his illegitimate son was under the age of sixteen years and was not living with his father. While the employee went through the form of a marriage ceremony with the mother of the boy on February 14, 1900, he had a wife living in England, who is the claimant in the case at bar. The mother of the son pre-deceased the employee. It is plain that the child is not entitled to compensation under the workmen's compensation act. It was held in *Gritta's Case,* 236 Mass. 204, that the words "child or children" as used in the act and amendments thereto refer only to a legitimate child or children. *Baylis* v. *Baylis,* 207 N. Y. 446. *Murrell* v. *Industrial Commission,* 291 Ill. 334. The single member rightly dismissed the claim of the minor son.

4. The question remains whether the widow, who lives in England, is entitled to compensation as matter of law. The evidence upon this question is contained in her deposition in which she states that she was married to the deceased in England on April 18, 1892; that they lived together thereafter about five and one half years; that one child now living was born as the result of the marriage; that during the time they lived together her husband was guilty of improper relations with other women; that on many occasions he struck and otherwise ill-treated her; that his wages were insufficient to support the family and that she worked as a weaver from the time of their marriage until shortly before he left her, except during a period of time when she was confined;

that he left for America in November, 1897; that she never actually declined to accompany him, and that "When he asked me to go to America, I said I would, if he would alter his ways. His reply was — that he would please himself — to which I made no answer." She also testified that in April, 1906, she learned that after he came to America "he had contracted a bigamous marriage." The single member found as follows: that from the claimant's evidence it is not clear "as to whether she actually ever surprised her husband in adultery;" that "whatever his relations with other women to which she objected, the fact remains that she continued to live with him up to the time he made up his mind to come to America, that he did ask her to come with him and she did not accept the opportunity. . . . The reasonable inference from all the circumstances appears to me to be that she did not wish to leave her native country to journey to a strange land with her husband for whom her affection appears to have been neither deep nor abiding. I do not consider that she was justified in this refusal. . . . It was the husband's right to choose and establish the marital domicil and in exercising his right to change his domicil I cannot see that he acted unreasonably. . . . I see nothing in the present case to show a legal excuse for the wife's refusal to accompany her husband in his change of domicil and I find that she did so refuse. . . . Both of them, I believe, were willing to separate but the fact remains that the wife refused to accompany her husband when he was willing that she should and had requested her to. Even though he was glad to get rid of her, that does not prevent her conduct from constituting desertion."

To entitle the claimant to compensation under the act she must show affirmatively that at the time of her husband's death she was living apart from him for justifiable cause or because he had deserted her. St. 1911, c. 751, Part II, § 7, as amended by St. 1914, c. 708, § 3, St. 1919, c. 204. Upon this question, in addition to the findings of the single member above quoted, he states: "Considering the facts of the case here, the circumstances under which she separated from her husband and that they lived apart for twenty-two years without any effort on her part to communicate with him, I find that she has not sustained this burden." It is provided by St. 1911, c. 751, Part II, § 7, as

amended by St. 1914, c. 708, § 3, that "The findings of the board upon the questions of such justifiable cause and desertion shall be final." It follows that the findings of the single member which were affirmed and adopted by the Industrial Accident Board on review must stand if there is any evidence to support them. *Pigeon's Case*, 216 Mass. 51. *Pass's Case*, 232 Mass. 515. *Beckles's Case*, 230 Mass. 272, 274. *Sciola's Case*, 236 Mass. 407, 413. The findings in effect are that the claimant was not living apart from her husband for justifiable cause and that she deserted him. If all the evidence offered by her and contained in her deposition were believed, it is plain that she was living apart from the deceased for justifiable cause; but neither the single member nor the board was bound to believe her testimony, *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323, and it is apparent from the findings that it was not deemed worthy of credence. The finding that the husband's improper relations with other women and his assaults upon her had been condoned as the husband and wife continued to live together up to the time he left for this country was not unwarranted. Her testimony that she learned of his subsequent marriage in April, 1906, could have been disbelieved. If she did not learn of such subsequent marriage until after his death, she could not be found to have been living apart from him for that cause; although if she had learned of it after she deserted him and before the period making the desertion complete, she would have been justified in continuing to live apart from him and would not thereby be prevented from obtaining compensation under the act.

We cannot say that, as matter of law, the findings of the board that the widow was not living apart from the deceased for justifiable cause and that she had deserted him were erroneous. It follows that the entry must be

*Decree affirmed.*