## UNITED STATES CASUALTY CO. v. HARDIE.  (No. 834—4895.)*

Commission of Appeals of Texas, Section B. Nov. 30, 1927.

**1. Master and servant ⟠⟿371—To be compensable injury must originate in employer's business and be received in furtherance thereof (Rev. St. 1925, art. 8309).**

In order that an employee may be entitled to receive compensation under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), the injury must have to do with and originate in the business of the employer, and must be received while employee is engaged in or about the furtherance of employer's business, as provided in article 8309.

**2. Master and servant ⟠⟿348—Courts construe act liberally in employee's favor (Workmen's Compensation Law).**

Since Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), arbitrarily restricts

·rights of employees who come within its provisions, courts construe the law as liberally as the terms of the act will permit in favor of the employee.

**3. Master and servant** ⬅️**373—Injury to employee while warding off friendly attack held compensable (Workmen's Compensation Law).**

Where a produce company's salesman and clerk was injured while warding off a friendly attack of another while the employee was attending to his duties, his injury *held* compensable within the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), against a contention that during the friendly attack the employee had been forced out of his master's business. .

**4. Master and servant** ⬅️**373—Employee's resisting forcible efforts tending to prevent discharge of duties is inherent in and incidental to employment.**

It is inherent in and incidental to any employment for an employee to resist forcible efforts which tend to prevent the discharge of the duties which he owes to his employer.

**5. Master and servant** ⬅️**371—Risk "incidental to employment" is one connected with what workman must do.**

A risk "incidental to employment" is ·one which belongs to or is connected with what a workman has to do in fulfilling his contract for · service.

**6. Master and servant** ⬅️**371—Accident arises "in course of and out of" employment, when it occurs within employment period at place where employee reasonably may be.**

An accident arises "in the course of and out of" the employment when it occurs within the period of employment at a place where the employee reasonably may be in the performance ·of his· duty, and while he is fulfilling that duty or engaged in doing something incidental thereto; it not being necessary that he be engaged in performing the exact duties prescribed by his employer.

**7. Master and servant** ⬅️**371—Injury arose out of employment where employee was doing what reasonably could have been expected of him.**

Where an employee of a produce company was injured while at his place of work while warding off a friendly attack but making no attack himself, *held* that his injury arose out of his employment, since he was doing what reasonably could have been expected of him as an incidental duty to his employment.

Error to Court of Civil Appeals of Eighth Supreme Judicial District. ·

Action by the United States Casualty Co. against John T. Hardie and others to set aside an award of the Industrial Accident Board. A judgment for named defendant, and for plaintiff against J. P. (Mac) Alexander and C. M. Shackelford, was affirmed by the Court of Civil Appeals (294 S. W. 672), and plaintiff brings error. Affirmed.

Burgess, Burgess, Chrestman & Brundidge and L. Elliott, all of Dallas, for plaintiff in error.

Coke & Coke and Thos. G. Murname, all of Dallas, for defendant in error.

LEDDY, J. This case arises under the Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq.), and presents but the single ' question: Were the injuries for which compensation was awarded received by the claimant while engaged in or about the furtherance of the business of his employer, and did they originate in and arise out of such employment?

Defendant in error was employed as· a ' clerk and salesman by the Merchants' Produce· Company, it being his duty to sell to the general public various kinds of produce carried by his employer. The building in which the employer carried on such business was situated in the produce district of the city of Dallas. It appears a custom existed among the produce men in that locality to borrow different articles of produce from each other when one happened to be short, and to repay the same when a shipment of ' similar produce was received.

On October 11, 1923, the claimant was in his employer's place of business actively engaged in the discharge of his duties as a produce salesman. On that date one Mac Alexander, an employee of C. M. Shackelford, a produce man operating an adjacent produce store, came into the place of business where claimant was employed and gathered up some lettuce and placed it in a paper bag. As Alexander started to leave, claimant called to him, asking how much lettuce he had. Alexander merely glanced at claimant and did not reply to his inquiry. Claimant then turned and resumed a conversation he was holding with two men on his employer's premises. In the meantime, Alexander set the lettuce down at the corner of the building and came to where claimant was and . reached out and grabbed hold of him. It appears that claimant, "for personal purposes of his own," was wearing a new suit of clothes. When claimant was seized he asked Alexander to desist, as he had on his good clothes and would get them dirty. Alexander replied that that was just what he wanted to do, that claimant had no business with ' those clothes on, and that he wanted to dirty them. Alexander then attempted to throw claimant to the ground, the claimant resisting as best he could. During the progress of the struggle claimant repeatedly requested Alexander to desist, but was unsuccessful in stopping him, until finally Alexander ceased when he was informed by claimant that he was hurt.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Alexander did not directly inflict any injury upon the claimant. It seems that in exerting himself to break loose from the struggle, and to prevent Alexander from throwing him to the ground, claimant overexerted himself, causing a dilation of his heart, causing a rather serious injury.

There is no substantial conflict in the evidence as to the nature of the struggle—that is, that Alexander was attempting to throw claimant in order to dirty his clothes—and that claimant was an unwilling participant in the struggle, the only efforts made by him being to release himself from Alexander's grasp and terminate the conflict. The claimant testified:

"I was attempting to get away from him all the time, to release myself. After he had jumped and came over and caught this grab around my back I begged him to quit, and he released me. Mac Alexander laid his hands on me first. I didn't realize at the time what his intentions were. As he grabbed me I thought about getting my clothes dirty and asked him to quit."

O. B. Mason, an eyewitness to the struggle, testified:

"They kept tussling and Hardie kept begging him to let him go, but he didn't.. So finally Hardie said, 'Quit, Mac; you are hurting me.' He finally turned him loose. Hardie did not attempt in this wrestling match to wrestle with his man. He tried to get loose. He told Mac Alexander to leave him alone. The way Mac Alexander had him he couldn't push. Hardie just asked him to quit."

Jack Murphy, another eyewitness, gave a similar version of what took place. He testified:

"Alexander just reached out and hooked John up against him, and John was trying to push him off, and he asked him two or three times to quit. Mac Alexander approached John from the side I think, and just grabbed him up and kind of threw him over, and John was trying to push him off all the time. He was trying to lock his arms around Hardie's neck and Hardie was trying to hold him off. Hardie was holding him off at arm's length. He was using both arms trying to push him off of him. Hardie made no effort to throw Alexander. Alexander was trying to throw Hardie. He had hold of him and tried to make further advances to get hold of him. He changed his holds and grabbed new holds and tried to get further on him all the time. It seemed like he was trying to break him down, trying to get his arms around him and squeeze him into him, and John was holding him off with his hands."

Mac Alexander tells a similar story to the other witnesses:

"I walked up and grabbed Johnnie first. I was trying to throw him."

The Court of Civil Appeals, under this evidence, found that all the claimant did when attacked by Alexander was involuntarily done; that claimant was in no sense and at no time the aggressor; that the extent and purpose of what he did was an effort to ward off the attack made upon him to prevent the assailant from soiling his clothes.

At the close of the evidence plaintiff in error, conceiving that the undisputed evidence showed claimant was not engaged in the furtherance of the employer's business at the time he was injured, and that such injury did not arise out of his employment, request-, ed a peremptory instruction, the refusal of which being the basis of the only error assigned.

[1] In order that an employee may be entitled to receive compensation under the Workmen's Compensation Law, the injury . received must be such as is described in part 4, art. 8309, Revised Civil Statutes 1925; that is, it must have to do with and originate in the business of the employer, and the injury must be received by the employee while engaged in or about the furtherance of the business of the employer.

The Supreme Court, in the case of Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, defines the character of injury compensable under the Workmen's Compensation Law to be:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."

[2] In view of the fact that the Workmen's Compensation Law arbitrarily restricts the rights of employees who come within its provisions, it has been the policy of the courts of this state to give as broad and liberal construction of such act in favor of the employee as the terms of the act will permit. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; McClure v. Georgia Casualty Co. (Tex. Com. App.) 251 S. W. 800.

The question arises, Does an injury received by an employee engaged in the active performance of his duties on the premises of the employer forfeit his right to compensation if he receives such injury while attempting to prevent a third party from interfering with the performance of the duties he owes to his employer?

It must be borne in mind that the claimant did not by word or act invite the struggle which resulted in his injury. He was an unwilling participant therein. He protested against the same from the very beginning, and at no time said or did anything which even tended to indicate that the struggle was a mutual one. He was employed by his employer as a salesman. It was his duty to hold himself in readiness at all times during the hours of his employment to serve the customers of his employer. If any stranger or third party interfered with him in a way

that would prevent him, even temporarily, from performing the duties for which he was employed, it was his duty to use reasonable means at his command to prevent such person from turning him aside from the line of his duty.

[3] From the time Alexander grabbed him claimant was not in a position to serve his employer. As long as the struggle continued, he was not in position to render the services for which he had been employed. He could only resume a proper relation with his employer by attempting to free himself from the clutches of his assailant. His act, therefore, in attempting to place himself in an attitude where he could continue to perform his usual and customary duties, was necessary in furtherance of his employer's business.

It is vigorously contended by plaintiff in error that at the time the claimant was injured he had turned aside from the duties of his employer and was engaged in an act that was not in furtherance of his master's business. We do not think an employee on the premises in the service of his master can be thus forced out of the master's employment. As is said in Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728:

"An employé does not step aside from his employment and lose the protection of the Workmen's Compensation Act by a temporary deviation from his usual vocation when he is doing a reasonably necessary act at the time and place to the end that the work and business of the employer may be properly conducted or preserved."

[4, 5] If the claimant had voluntarily turned aside from his employment by inviting this struggle, or willingly engaged therein, then an altogether different question would be presented, as participating in such struggles was no part of his employment, and, if voluntarily done, would not be in furtherance of any duty he owed his employer or in any way in his interest. It seems to us, however, it is inherent in and incidental to any employment for an employee to resist forcible efforts which tend to prevent the discharge of the duties he owes to his employer. The term "arising out of the employment," in the sense in which it is used, is not to be understood as being restricted and confined to the exact duties prescribed for the servant. Whatever may be incidental to the employment must necessarily belong to it. A risk incidental to an employment may fairly be said to be one which belongs to or is connected with what a workman has to do in fulfilling his contract of service. U. S. Fuel Co. v. Ind. Com., 310 Ill. 85, 141 N. E. 401; Boorde v. Ind. Com., 310 Ill. 62, 141 N. E. 399.

[6] If the claimant's employer had sent him on an errand in connection with the business, and he had been forcibly stopped by Alexander's using the same efforts as on the occasion in question, would he not have had the right to resist the interference with the discharge of the duties he owed to his employer in order that he might continue and complete the errand on which he had been sent? To hold otherwise would in effect require the employee to turn aside from the employer's business, regardless of his volition and purpose not to do so. There can be no reasonable basis for a distinction between an interference with a servant on an errand for his employer and an interference with such servant while he is on his employer's premises in the active discharge of his duties. An accident arises in the course of and out of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duty and while he is fulfilling that duty or engaged in doing something incidental thereto. Fournier Case, 120 Me. 236, 113 A. 270, 23 A. L. R. 1156.

Stress is laid upon the fact that Alexander was acting in a friendly way in engaging in this struggle with the claimant. Conceding this to be true, the fact remains he was unlawfully interfering with the employee in temporarily preventing him from being in position to carry out his duties to his employer. The act, whether friendly or otherwise, was just as effectual to disable the employee from performing his duties during the time the encounter continued. It was the duty of the employee, regardless of the motive that actuated Alexander in making the attack, to resist the same and restore himself to the position occupied before it began, in order that he might wait upon and serve the patrons of his employer and thus fulfill his contract of service.

The Supreme Court of this state, in the Behnken Case, supra, quotes with approval the rule laid down in Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 918, which we think applicable to the facts of this case. It is there held:

"What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's tasks."

The obligation rested upon claimant during the hours of his employment to perform, or hold himself in readiness to perform, the duties incumbent upon him as a salesman in his employer's business. In order for him to do this, it necessarily follows that he must be accorded the right to use reasonable means to prevent any unlawful interference which tends to prevent the performance of the tasks imposed upon him under his employment.

[7] Claimant was injured under circumstances which bring his injury within another well-recognized rule for determining whether the same arose out of the employment; that is, he was doing what could rea-

sonably have been expected of him against the attack made. The average employer would reasonably expect an employee to resist efforts of a third party who desired to engage with him in a scuffling match on the premises during business hours. It is not an uncommon occurrence for outsiders to attempt to interfere with employees engaged in the performance of their duties. It would be manifestly unjust to the employee to hold that an injury received when he is resisting such interference does not come within his line of duty.

For the reasons given, we conclude that the claimant's injury arose in the performance of one of the incidental duties of his employment, and is therefore within the rule entitling him to compensation for the injury sustained. McClure v. Georgia Casualty Co. (Tex. Com. App.) 251 S. W. 803; Martin v. Chase, 194 Iowa, 407, 189 N. W. 958; Whiting-Meade Com. Co. v. Industrial Accident Commission, 178 Cal. 505, 173 P. 1105, 5 A. L. R. 1518; Rainford v. Chicago City Ry. Co., 289 Ill. 427, 124 N. E. 643; Broadbent's Case, 240 Mass. 449, 134 N. E. 632; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530; Verschleiser v. Joseph Stern & Son, 229 N. Y. 192, 128 N. E. 126.

The Court of Civil Appeals was correct in holding that the trial court did not err in refusing plaintiff in error's requested peremptory instruction, and we recommend that its judgment be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.