CITY OF MONTPELIER *v.* TOWN OF CALAIS.

May Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1944.

6

*Theriault & Hunt* for the defendant.

*Fred E. Gleason* for the plaintiff.

SHERBURNE, J. This action is brought under the provisions of P. L. 3923 to recover the amount expended in the relief and burial of Herbert Stevens, a pauper. Trial was by court, and upon facts found judgment was rendered for the plaintiff, and the cause is here upon defendant's exceptions. The only questions briefed are those of residence and the amount of recovery under the notice to the defendant town.

The findings show that Stevens was arrested by the sheriff of Washington County on July 12, 1939, at the residence of Jerry Slayton, in the defendant town, and was taken to the county jail in the City of Montpelier. Stevens was then suffering from a

cancer which required immediate medical attention, and the sheriff notified defendant's overseer of the poor of his condition and that he required immediate medical attention and took him to Heaton Hospital in the City of Montpelier. After being there a few days he was removed to the Mary Fletcher Hospital in Burlington, where he remained until October 3, 1939. Defendant's overseer of the poor paid Heaton Hospital on July 19, 1939, and the Mary Fletcher Hospital on October 30, 1939. On October 7, 1939, Stevens had returned to Montpelier and was still suffering from the cancer, and his condition being called to the attention of plaintiff's overseer of the poor he was thereafter cared for by him until his death. On July 17, 1939, plaintiff's overseer by letter notified defendant's overseer of the poor that Stevens was a poor person in the City of Montpelier without property or means, in need of assistance, and had applied to the City of Montpelier for aid. On July 17, 1940, a second notice of the same tenor was sent by plaintiff's overseer of the poor to defendant's overseer of the poor.

Stevens was residing at the residence of Jerry Slayton in Calais on July 12, 1939. He was living there in the spring of 1936, and was residing there when the listers came there that spring. He was there when the listers called there in the spring of 1937. During that year and 1938 he was a frequent customer at the Co-operative Store in Calais. From July 3 to August 5, 1937, Stevens worked for one Parker in East Montpelier. He took his meals there but slept at night at a neighbor's. In the fall of 1938, he was employed for about one month by Earl St. John, a farmer in East Montpelier, where he assisted in shingling a barn. We quote findings 11, 12 and 13 as follows: "11. Stevens had a room at the Slayton place in which he kept his belongings, clothing and personal effects." "12. On July 25, 1940, the overseer of the poor of the City of Montpelier went to the Slayton home and there obtained the articles left by Stevens when he was arrested on July 12, 1939. This comprised a suit case and duffle bag in which were clothing, pants, personal belongings, also a rifle and shotgun belonging to said Stevens. This personal property was in a sleeping room on the second floor of the house, in which was a sleeping bed and some furniture, comprising chairs; that this room was occupied by said Stevens whenever he was at the Slayton residence." "13. That said Stevens supported himself by his own labors during the period from the spring of 1936 until July 12, 1939, while re-

siding in said Town of Calais, and that he was not assisted by said Town until he went to the Heaton Hospital on the day of his arrest."

To constitute a residence under the pauper law, the fact that the pauper actually lived in the town in question and his intent to make that town his home must concur. *Georgia* v. *Waterville,* 107 Vt 347, 350, 178 A 893, 99 ALR 453; *Barton* v. *Albany,* 108 Vt 531, 535, 189 A 853. To be enabled to count intervening time he must, when absent, by contract or understanding, have had a place there to which he had the right to return, and must have had the present and continuing intention to return there whenever he left, and was away from, that town. *Berlin* v. *Worcester,* 50 Vt 23, 26; *Londonderry* v. *Landgrove,* 66 Vt 264, 267, 29 A 256; *Jericho* v. *Burlington,* 66 Vt 529, 533, 29 A 801; *St. Johnsbury* v. *Concord,* 68 Vt 481, 35 A 429; *Georgia* v. *Waterville, supra,* 107 Vt 347, 353, 178 A 893, 99 ALR 453; *Barton* v. *Albany, supra.*

Every reasonable intendment is to be made in support of the judgment. Therefore doubtful findings are to be so read as to support the judgment, if they reasonably may be. *Campbell* v. *Ryan,* 112 Vt 238, 240, 22 A 2d 502; *Manchester* v. *Townshend,* 110 Vt 136, 144, 2 A2d 207; *Reed* v. *Hendee,* 100 Vt, 351, 354, 137 A 329. If the words "while residing" in finding 13 are fairly and reasonably susceptible of a construction that Stevens resided in the town of Calais from the spring of 1936 until July 12, 1939, a period of more than three years, as we think they are, it is the duty of this Court to give them that construction in support of the judgment. *In re Peck's Estate,* 87 Vt 194, 210, 88 A 568. So construed this finding is determinative of Stevens' residence, if supported by the evidence. *Mount Holly* v. *Cavendish,* 92 Vt 38, 102 A 60; *Mount Holly* v. *Plymouth,* 89 Vt 301, 95 A 572. This finding of residence is an ultimate finding and is a conclusion resulting from mixed questions of law and fact. While the prior findings do not contradict the conclusion arrived at, they can hardly be said to support it to the extent that it can be reasonably inferred therefrom that Stevens had a place in Calais to which, when absent in East Montpelier, by contract or understanding, he had the right to return, and to which he had the present and continuing intention to return whenever he left and was away. While it is the better practice to report all the facts upon which an ultimate finding is based, it is not legal error to omit to do so. *Allen's Admr.* v. *Allen's*

*Admrs.,* 79 Vt 173, 186, 64 A 1110; *Partridge* v. *Cole,* 98 Vt 373, 375, 127 A 653; *Trask* v. *Walker's Estate,* 100 Vt 51, 65, 134 A 853; *Patch* v. *Squires,* 105 Vt 405, 411, 165 A 919; *Taylor* v. *Henderson,* 112 Vt 107, 116, 22 A2d 318.

The exceptions question the sufficiency of the evidence to support the finding of residence in finding 13, and in particular attack finding 11 on the ground that the finding that Stevens "had a room" and that he "kept" his property described in such a room, with its implication of permanency, is unwarranted by the evidence. Other than that Stevens had his property with him when actually staying at Slayton's and that when there he occupied a part of the Slayton boy's room, the only evidence that can possibly be claimed to support the finding is some statements claimed to have been made by Slayton on July 25, 1940, when Mr. Grady, plaintiff's overseer of the poor, went to get Stevens' things. One Fernandez, at that time an alderman of Montpelier, was asked if on that occasion he heard Slayton make any statement with respect to the length of time that Stevens' things had been there, and over defendant's objection as to materiality answered that Slayton said "They had been there several years." This witness also testified that Slayton admitted that Stevens had lived there, but he didn't hear him say how long. Slayton was called as a witness by the plaintiff and asked if he didn't say to Mr. Grady and Mr. Fernandez on that occasion that those things had been there for a good many years, and he answered "No." He was then asked if he didn't tell them that Stevens had had that room for a good many years, and he again answered "No." He was then asked if it was the fact that these things had been there a good many years, and he answered "No." He was then asked how long they had been there, and he answered since Stevens had come there the fall before his arrest in July, 1939. He was then asked how many years Stevens was in and around his place, and he answered 3 or 4 years, maybe, off and on. He further testified that Stevens did not leave his things when he went away. After this Mr. Grady testified without objection that on that occasion Slayton said "These things have been here for years" and that the room was Stevens' room and that "he had occupied that room for years."

The question presented is, can a finding be based upon uncorroborated hearsay evidence admitted without objection. This is discussed somewhat in *Taplin & Rowell* v. *Harris,* 88 Vt 15, 20, 21,

90 A 956, and it is there said that, although the law does not recognize hearsay as legitimate evidence, it may nevertheless have a probative effect. In *Pocket* v. *Almon,* 90 Vt 10, 14, 96 A 421, it is said that hearsay evidence admitted without objection is for consideration by the jury, and *Taplin & Rowell* v. *Harris, supra,* is cited as authority. But the defendant stresses *Streeter's Dependents* v. *Hunter,* 93 Vt 483, 108 A 393, in support of its contention that a finding cannot be based upon uncorroborated hearsay. That case cites *Pocket* v. *Almon, supra,* to the proposition that hearsay evidence received without objection is for consideration, and then goes on to state that the defendants there argued that when all the evidence to a point is hearsay an award cannot stand, and then, without so deciding, shows that the finding in question did not depend upon hearsay alone. In addition to what is said in *Taplin & Rowell* v. *Harris, supra,* we approve as correct reasoning what is said in *Barlow* v. *Verrill,* 88 NH 25, 183 A 857, 104 ALR 1126, as follows:

"The hearsay rule is merely an exclusionary principle limiting admissibility and in no sense a canon of relevancy. It involves no assertion that hearsay statements are without probative force or that they furnish no logical basis for conclusions of fact. On the contary, if relevancy was not assumed, no special rule of exclusion would be required. Unless it were logically relevant, hearsay would be excluded by virtue of the fundamental axiom of evidence that 'none but facts having rational probative value are admissible.' I Wig. Ev. sec. 9. 'In judging . . . as to the real scope and value of any rule of exclusion like that rejecting hearsay it is necessary to bear in mind that such exclusion can apply, properly speaking, only to that which is already evidence. The hearsay rule cannot be invoked to exclude statements which are merely irrelevant.' 4 Chamberlayne, Ev. sec. 2722. 'The hearsay rule is merely an additional safeguard to be applied to testimonial evidence otherwise admissible.' 2 Wig. Ev. sec. 1424. Consequently it is established law, supported by an immense number of decisions, that hearsay testimony when admitted without objection is to be considered and given its logical probative effect."

As said in *Damon* v. *Carroll,* 163 Mass 404, 40 NE 185, 187, "Hearsay evidence usually is rejected because it lacks the corroboration of an oath or affirmation, and not because it has no natural tendency to induce belief. When hearsay evidence is incom-

petent, the reason for its exclusion is the same in principle as that which formerly excluded testimony from interested witnesses. It was thought that the effect of interest made it unsafe to consider the testimony of such witnesses, just as the lack of an oath makes it unsafe to consider hearsay evidence. But it was always held that, if testimony incompetent by reason of the interest of a witness was allowed to go before the jury, they might consider it as they would any other testimony." For further authorities see Annotation, 104 ALR 1130.

We conclude that a finding can be based upon uncorroborated hearsay evidence admitted without objection. This being so, the weight to be given to it in this case was for the trial court, as triers of fact, to decide. Because Slayton denied making the claimed statements and testified that the facts were otherwise does not justify this Court in holding that the hearsay statements were without probative effect. Perhaps the trial court disbelieved him. Under somewhat similar circumstances hearsay evidence, disputed by the declarant, was held sufficient to establish a fact in issue in *Barlow* v. *Verrill, supra,* and in *DuBois* v. *Powdrell,* 271 Mass 394, 171 NE 474.

The evidence was sufficient to show that Stevens had a room at Slayton's which he had occupied for years and in which he had kept his things for years. From this it could reasonably be inferred that when absent, by contract or understanding, he had a place there to which he had the right to return, and that he had the present and continuing intention to return there whenever he left and was away, during the period from the spring of 1936 to July 12, 1939. As against the objections raised the findings are supported by the evidence.

By an exception to the judgment the defendant says that if the plaintiff is entitled to recover, it is entitled to recover only for assistance rendered after application for assistance was made to plaintiff's overseer and notice thereof was given by said overseer to defendant's overseer, which was not until July 17, 1940.

P. L. 3923 directs the overseer of the poor of a town to relieve a poor person in need of assistance, "when application for such assistance is made", and provides that if he has not resided in such town for three years, supporting himself and family, and if he is not of sufficient ability to provide such assistance, the town

so furnishing the same may recover the expense thereof from the town where he last so resided. P. L. 3924 provides:

"An action shall not be commenced by the town furnishing such assistance, until the overseer of the poor has given notice of the condition of such person or family to the overseer of the poor of the town where the person last resided for the space of three years, supporting himself and family, and until the last named overseer has neglected to provide for such person or family for sixty days after such notice; and if such notice is given within thirty days of the time application for such assistance is made, all necessary expenses incurred within such thirty days may be recovered in such action. . . ."

Under P. L. 3923 an application for relief, or what amounts to an application, is required. It matters not who makes the application. *Peabody* v. *Holland,* 107 Vt 237, 242, 178 A 888, 98 ALR 866. The duty of the overseer to afford relief arises and becomes ineludible whenever he receives information, however conveyed, that relief is required. *Waitsfield* v. *Craftsbury,* 87 Vt 406, 408, 89 A 466, Ann Cas 1916 C 387; *Hardwick* v. *Barnard,* 102 Vt 330, 334, 148 A 408; *Marshfield* v. *Cabot,* 107 Vt 409, 415, 180 A 897; *Manchester* v. *Townshend,* 110 Vt 136, 142, 2 A2d 207; *Nadeau* v. *Marchessault,* 112 Vt 309, 311, 24 A2d 352. Such information, whether received from others or from the overseer's personal observation, amounts to an application. Such application or information presupposes a duty to act upon its receipt. If an overseer gives notice to the overseer of another town under the provisions of P. L. 3924 before he is under any duty to render assistance the notice is premature and unavailing. 48 CJ 530.

That the overseer of Montpelier was under a duty to assist Stevens on and after October 7, 1939, is not questioned, so the only thing necessary to ascertain is whether he received an application, or what amounts to an application, for assistance on or before July 17, 1939, which he was under a duty to heed, as otherwise the notice of that date was premature. The findings do not show that Stevens' condition was called to the attention of the overseer of Montpelier until October 7, 1939, and unless we

presume in support of the judgment that the overseer had information upon which it was his duty to act before he sent the notice of July 17, 1939, under the rule that where the regularity of an official act is dependent upon some coexisting or preexisting act or fact there is a presumption in favor of the doing of such act or the existence of such fact (*Bacon* v. *Boston & Maine R. R.* 83 Vt. 421, 434, 76 A 128, and cases cited; *R. H. Stearns Co.* v. *United States,* 291 US 54, 63, 54 SCT 325, 78 L Ed 647, 653; *Manchester* v. *Townshend,* 110 Vt 136, 143, 2 A2d 207), the notice was premature.

█ The findings show that Stevens was arrested in Calais by the sheriff and taken to the jail in Montpelier, and that the sheriff notified the overseer of Calais of his condition and that he required immediate medical attention and took him to Heaton Hospital in Montpelier, from which he was removed in a few days to the Mary Fletcher Hospital in Burlington. It is provided in P. L. 3926 as follows: "If a transient person . . . is committed to jail, and is in need of relief, or has been committed to jail for any offense and at the time of his discharge therefrom is in need of relief, . . . the jailer . . . shall be at the expense of relieving and supporting such person until he represents his situation . . . to the overseer of the poor of the town in which the offense was committed, after which the overseer of the town so notified shall provide for his support; and, if the overseer neglects to provide for such support, the person so supporting him may recover therefor in an action of contract on this statute, against the town so notified. . . ." Although this section has been amended in other respects by section 1 of No. 77 of the Acts of 1935, and by section 1 of No. 47 of the Acts of 1943, the foregoing provisions have remained unchanged. The sheriff is jailer in his county. P. L. 3393. When committed to jail Stevens was confined in a place not his home, and was a transient person within the meaning of the statute. *Randolph* v. *Lyon,* 106 Vt 495, 498, 175 A 1.

The findings do not show whether Stevens was arrested upon criminal or civil process, nor where the offense for which he was arrested was committed, nor when he was discharged from jail. If he was committed to jail on criminal process he became a state prisoner, and while in jail the expense of his board and care was assumed by the State, and no town was liable for his support until

his discharge. P. L. 515, 8855, 9028. *Smith* v. *Rutland,* 99 Vt 183, 187, 130 A 714. If in need of relief at the time of his discharge, or if he was committed to jail upon civil process, the town where the offense was committed became liable for his care and support upon proper notice from the jailer. If committed upon criminal process the offense was the crime charged; if upon civil process the offense was the act that gave rise to the cause of action on account of which he was arrested. *Smith* v. *Rutland, supra,* 99 Vt at pages 189, 190, 130 A 714; *Catlin* v. *Georgia,* 103 Vt 97, 100, 152 A 89.

To the extent that regularity can be presumed in favor of the official acts of an overseer of the poor the same can be presumed in favor of the official acts of a sheriff. If we can presume that the overseer had information upon which it was his duty to act before sending the notice of July 17, 1939, then we can presume that facts existed upon which the sheriff could properly call upon the overseer of Calais to bear the expense of caring for Stevens. If such facts existed, then at the time the sheriff notified the overseer of Calais the overseer of Montpelier was under no duty to render assistance directly, or indirectly in view of the finding of a pauper residence in Calais.

The presumption of regularity of official acts is a disputable presumption. Such a presumption, unlike an inference, is a deduction which the law requires a trier to make. *Cross* v. *Passumpsic Fibre Leather Co.,* 90 Vt 397, 407, 98 A 1010. As said in *Tyrrell* v. *Prudential Ins. Co. of America,* 109 Vt 6, 23, 24, 192 A 184, 192, 115 ALR 392: "A disputable presumption is a rule of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become functus officio. . . . A presumption, of itself alone, contributes no evidence and has no probative quality. It takes the place of evidence, temporarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such

a case, the presumption does not have to be overcome by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena."

We said in *Simpson* v. *Central Vermont Railway Co.,* 95 Vt 388, 393, 115 A 299, that one presumption may be met or even overcome by another presumption, and when opposing presumptions arise from the evidence the question is one of fact, and goes to the jury. That case was decided when our rule was that presumptions had the force of evidence. That rule is contrary to *Tyrell* v. *Prudential Ins. Co. of America, supra,* and is no longer in force. Since under the rule adopted in the latter case the sole effect of a presumption is to fix the burden of producing evidence, it is a necessary corollary that conflicting presumptions are legal impossibilities, because the burden of producing evidence as to the same issue cannot be put upon both parties at the same time. The establishment of the basic fact of a presumption will discharge the burden created by the previous establishment of the basic fact of an inconsistent presumption, and will itself create no burden, and, in such case, the existence or non-existence of the presumed fact must be determined exactly as if no presumption had ever been applicable. Thayer's Preliminary Treatise on Evidence 343-350; Wigmore on Evidence, Sec. 2493; Some Observations Concerning Presumptions by Edmund M. Morgan, 44 Harvard Law Rev. 906, 916, 917; Model Code of Evidence of the American Law Institute Rule 704 (2) and Comment b. thereon.

If from the facts found the law requires a deduction that when plaintiff's overseer sent the notice of July 17, 1939, he had information upon which it was his duty to render assistance to Stevens, it also requires a deduction that when the sheriff notified defendant's overseer on or shortly after July 12, 1939, plaintiff's overseer was under no such duty. It follows that unless something could have happened after the sheriff sent his notice and before plaintiff's overseer sent his notice, a period not in excess of 5 days, which could have made it the duty of that overseer to render assistance, then the existence of the presumed fact, the duty to render assistance, is to be determined exactly as if no presumption had ever been applicable. The facts found rebut any such happening. During the whole intervening period Stevens was a hospital patient for necessary care and treatment, for the expense of which the

defendant town, not the plaintiff city, was liable under the notice from the sheriff.

The result is that the plaintiff has failed to prove that the notice of July 17, 1939, was a valid notice. Although the defendant has failed to save an exception to the findings that entitles it to show what the fact is, it may be of interest to note that Mr. Grady, plaintiff's overseer, testified that Stevens' condition as being in need of assistance was first called to his attention on October 7, 1939.

Judgment was entered for the entire amount which the plaintiff had expended since October 7, 1939. As the notice of July 17, 1939, was premature judgment should have been entered only for the amount recoverable under the notice of July 17, 1940. The findings do not segregate the items so it is impossible to determine therefrom the amount that can be recovered under the later notice, hence the judgment must be reversed, and the cause remanded for a determination thereof.

*Judgment reversed, and cause remanded, with directions that the amount expended by the plaintiff for the care of Herbert Stevens from and after July 17, 1940, and for his burial, be ascertained, and that judgment be entered for that amount with interest. Let the defendant recover its costs in this Court.*