**TEXAS EMPLOYERS' INSURANCE ASSOCIATION**, Appellant,

v.

Mildred **BROGDON** et al., Appellees.

No. 15971.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 30, 1959.

Rehearing Denied March 6, 1959.

Rodgers & Stephens, Graham, Nelson, Sherrod & Lambert, and Eugene Sherrod, Jr., Wichita Falls, for appellant.

Jennings & Montgomery, and Elton M. Montgomery, Graham, for appellees.

RENFRO, Justice.

This is a Workmen's Compensation case. By appropriate points of error the defendant contends there was no evidence or insufficient evidence to show that James Phillip Brogdon's death was caused by an injury sustained while performing his duties as repairman or mechanic for his employer.

The pleading filed by Mildred Brogdon, surviving wife of James Phillip Brogdon, for herself and as next friend for her minor children, alleged that the producing cause of Brogdon's death was an injury or disturbance of his coronary system which was brought about and caused by the strenuous manual labor in which he was engaged on and prior to the date of his death, which caused him to be in a state of fatigue, and by the exertion which the deceased extended in defending himself from the friendly assault or horseplay precipitated by a fellow employee.

Brogdon was employed by Stephens Trucking Company as a mechanic and repairman. His principal duties were to repair and wash trucks and repair truck tires. The Company employed several drivers who made their headquarters in a small house near where Brogdon performed his regular duties. The truck drivers were not paid except when on actual duty, and occupied their idle time playing dominoes and in having fun with each other. About 10:00 o'clock a. m. on August 20, 1957, Brogdon was occupied with his duties and was either repairing a truck tire or filling it with air.

We of course present the evidence in the light most favorable to the jury's verdict. On the morning in question Brogdon was squatting down. Johnson approached him from the rear and jabbed him in the ribs.

Brogdon "jumped right up immediately." Johnson stepped back when Brogdon jumped up. Brogdon caught him after two or three steps and put his arms around Johnson's chest. It all happened at once. They wrestled or scuffled around some, both were taking part in it. After a few seconds Brogdon loosed his hold and relaxed. Johnson turned and ran into the dog house. Brogdon and Johnson were friends and there was no animosity between them. When Johnson "goosed" Brogdon it was a surprise to Brogdon. Brogdon was the kind of man who would react rather violently when jabbed in the ribs and such act would bring immediate reaction out of him. After entering the dog house Johnson heard someone say Brogdon had fainted and he returned to see Brogdon lying on the ground. At the time Brogdon grabbed Johnson he was not trying to strike or hurt Johnson. Immediately after the initial "goosing" Johnson stepped back when Brogdon jumped up. Johnson did not remember whether he had turned around or took off or backed away from Brogdon before Brogdon jumped up.

The witness Day testified he saw Brogdon filling a truck tire with air when Leonard Johnson approached Brogdon's back. Johnson "goosed", hit or did something to Brogdon; whatever it was made Brogdon jump. Brogdon jumped up and grabbed Johnson within two or three steps. After a brief scuffle Johnson broke and ran. After Johnson ran, Brogdon did not raise his head, he just slumped over and did not take a step after that. He turned blue in the face and fell to the ground. A doctor was called but apparently Brogdon was dead before the doctor arrived. The tires Brogdon worked on were big tires and heavy. A majority of the time Brogdon lifted the tires by himself. The tires were cumbersome and had to be manhandled by Brogdon. He saw Brogdon immediately before the unfortunate occurrence rolling a big tire on the rack. After Johnson jabbed Brogdon, Brogdon's reaction in jumping up and grabbing Leonard was almost simultaneous,

it appeared to be a natural sort of thing. All the contact between Brogdon and Johnson ended within two or three steps from where the "goosing" took place.

Brogdon worked on a forty hour a week basis but during the year of 1957 prior to his death he averaged 57 hours per week. Not long before his death he had missed some time because of a sprained back incurred in lifting during his work. For several days prior to August 20, he had complained of fatigue and because of tiredness had not played with his children and had for several days retired early to bed. He was a normal eater and had eaten a normal breakfast on the occasion in question.

The only medical witness introduced was Dr. Irvine, a specialist in pathology. He performed an autopsy upon Brogdon. He testified there was no tangible evidence of the cause of death. In response to a rather fulsome hypothetical question, the doctor testified that in his opinion Brogdon was a victim of coronary spasm and/or ventricular fibrillation; that three things bring on coronary disturbances, namely, eating (overeating), excitement (anxiety), and exercise (fatigue); the fact that Brogdon was engaged in a strenuous occupation and was at the time of death in a state of fatigue was taken into consideration by the doctor in answering the question as to cause of death.

Mrs. Brogdon testified that to her knowledge Brogdon had no cares or worries other than his job, and as previously stated was a normal eater.

■ If the coronary attack was brought on by fatigue, overwork and manhandling heavy tires, the injury is compensable. A strain sustained by an employee in course of employment is generally regarded as an injury under the terms of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W. 2d 581. When an injury is shown to have been received by an employee while he is acting within the course of his employment and such injury is the result of a risk or hazard of employment, it is compensable under the Workmen's Compensation Act. Aetna Insurance Company v. Hart, Tex.Civ. App., 315 S.W.2d 169.

A close question is involved in defendant's contention that at the time of his death Brogdon was engaged in horseplay, independently of and disconnected from the performance of any duty of his employment.

■ As a general rule no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay which was engaged in independently of, disconnected with, or disassociated from the performance of any duty of the employment, such injuries not arising "out of" the employment, within the meaning of those words as used in such acts, being in substance or nature foreign to the character of the work and hence apart from any duty toward the employer. 159 A.L.R. 319.

■ A well recognized exception to the general rule is that where an employee who was injured through horseplay or "fooling" by others employees took no part in the "fooling" but was attending to his duties, his injury is compensable. This exception was declared to be the law in Texas in Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137; and in United States Casualty Co. v. Hardie, Tex.Com.App., 299 S.W. 871, the Supreme Court held that where an employee is injured while warding off a friendly attack of another while the employee was attending to his duties, his injury is compensable under the Workmen's Compensation law.

In the above case the court held that all the injured employee did, when attacked by another, was involuntarily done, that he was in no sense an aggressor and that the extent and purpose of what he did was an effort to ward off the attack made upon

him to prevent the assailant from soiling his clothes.

■■■ In the instant case, it is undisputed that Johnson provoked the scuffle. The evidence is such that we feel that the jury could properly find that Brogdon, a "goosey" individual, merely acted involuntarily in jumping up and grabbing Johnson to prevent Johnson from again jabbing him and thus interfering with Brogdon's work. The jury could find that he was merely acting to ward off continued interference by Johnson, which would have interfered with his usual and customary duties. An employee does not step aside from his employment and lose the protection of the Workmen's Compensation Act by a temporary deviation from his usual vocation when he is doing a reasonably necessary act at the time and place to the end that the work and business of the employer may be properly conducted or preserved. Ex Parte Majestic Coal Co., 208 Ala. 86, 93 So. 728. As said in the Hardie case, supra [299 S. W. 875], " * * * it is inherent in and incidental to any employment for an employee to resist forcible efforts which tend to prevent the discharge of the duties he owes to his employer."

We have concluded that the evidence upholds the implied jury finding that Brogdon was not a voluntary participant in the horseplay but was acting in a reasonable effort to repel the onset of Johnson. We hold the evidence sufficient to support the conclusion that Brogdon's death was caused by coronary spasm or ventricular fibrillation which occurred due to fatigue and the exertion expended in defending himself from the friendly horseplay initiated by his fellow employee.

Defendant's last point contends the court erred in permitting the plaintiff to file a trial amendment after the case had commenced and the witnesses had testified. We have carefully considered the argument and authorities submitted by defendant and are of the opinion the defendant has not shown abuse of discretion on the part of the trial court in allowing said amendment. ·

The judgment is affirmed.

MASSEY, C. J., dissents.

MASSEY, Chief Justice (dissenting).

I dissent.

In my opinion the judgment of the trial court should be reversed for lack of evidence in support thereof. I would remand the cause rather than render since I believe the facts in respect to which the judgment might find support have not been fully developed, and it might even be properly said that the case was tried upon an erroneous theory by both plaintiff's counsel and the trial court. That remand would be the proper action under the circumstances is the rule of Lanford v. Smith, 1936, 128 Tex. 373, 99 S.W.2d 593, and Jackson v. Hall, 1948, 147 Tex. 245, 214 S.W.2d 458.

There seems to be no question but that the deceased did pursue and grapple with Johnson after the "goosing", albeit such pursuit was over a distance of only five or· six feet, or three or four steps. But for such pursuit and grappling the deceased might have died anyway (from the "goosing" and the involuntary bodily reactions resultant therefrom), but there is no evidence in the record to that effect. It might be that the involuntary bodily reactions resultant from the "goosing" included the deceased's actions in pursuit and grappling, but there is no evidence in the record that they were so included. ,

A basic fact necessary to be found and supported is that the injuries resulting in death were sustained while the deceased was acting within the scope and course of his employment. In view of the state of the record I am convinced that he must be treated as having engaged in horseplay when he pursued and grappled with Johnson. I recognize that it might be that the.

injuries resulting in his death occurred prior to and independent of his actual participation in the horseplay. The evidence in the record fails to designate which of the events occasioned the injuries resulting in death, assuming it was either one or the other. Furthermore, the evidence fails to demonstrate that such injuries were the result of both of the events, if indeed the injuries resulted from their cumulative effect.

If, upon the occasion of another trial, there is a want of evidence to the effect that the deceased's pursuit and grappling with Johnson was a part of his involuntary reaction from the "goosing", then I believe that it would be essential to any recovery that medical testimony be introduced in support thereof. Ordinarily medical testimony is not essential in a compensation case. I concede that it would not be necessary here were it not for the fact that death might have ensued from injuries which were independently sustained as the result of horseplay. If such was the fact then there would not be any liability under the Texas Workmen's Compensation Act.

I believe that under the present state of the record it is as consistent with probability that death resulted from horseplay as from the "goosing" (and the involuntary reaction which followed),—or was as likely to have solely resulted therefrom as from a combination of the two independent actions. I cannot conceive of any way to resolve this question other than by expert medical testimony, and it was not resolved in the trial below. Without such character of testimony it seems to me that the evidence would be evenly balanced, i. e., just as consistent with the insurance company's theory that recovery is inhibited by the Act as it is with the contrary theory. A conflict is thus arisen, the considerations whereof are equal. I do not deem the evidence to be such that could be found to preponderant in support of a recovery.

I confess that I am unable to find any discussion or authorities directly upon the point. A matter of analogy, however, is considered in Texas Law of Evidence, McCormick and Ray, Second Edition, p. 66, "Burden of Proof—Presumptions", sec. 54, "Conflicting Presumptions", and the authorities thereunder annotated. See particularly City of Montpelier v. Town of Calais, 1944, Sup.Ct., Vermont, 114 Vt. 5, 39 A.2d 350, 356, with its discussion and authorities.

I believe the following sentence is pertinent to the question here posed: "If an injury may result from one of two causes, for one of which, and not for the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant was liable produced the result which may have followed." 20 Am.Jur., p. 150, "Evidence", sec. 146, "Tort Actions".